**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | |
|---|---|
| AVANZALIA SOLAR, S.L. and <br> AVANZALIA PANAMA, S.A. <br> <br>                   Plaintiffs, <br>      v. <br> <br> GOLDWIND USA, INC., d/b/a <br> GOLDWIND AMERICAS, <br> <br>                   Defendant. | ) <br> ) <br> ) <br> ) <br> )   Case No.: 20-cv-05035 <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANT GOLDWIND'S REPLY IN FURTHER SUPPORT
<u>OF ITS MOTION FOR BILL OF COSTS</u>**

**I.      INTRODUCTION**

Plaintiffs' Response to Goldwind's Bill of Costs sidesteps the law and certain facts in endeavoring to avoid imposition of costs by this Court. One blatant example underscores the credibility gaps in Plaintiffs' submission. Plaintiffs assert that Goldwind cannot recover costs of depositions Goldwind noticed and took (as opposed to those which it had to defend) claiming that those costs have not been shown to be reasonable and necessary. As the only "example" of why those depositions were supposedly not reasonable and necessary, Plaintiffs cite to the deposition of Ronald Jimenez, noting that Mr. Jimenez was not listed in Plaintiffs' Rule 26 disclosures. But this statement was disingenuous because as Plaintiffs well know, Mr. Jimenez was specifically named by them in their answers to interrogatories as a person with knowledge of key issues in this case. But even more telling, **every** deposition taken by Goldwind was either a person identified in Plaintiffs' own Rule 26 disclosures and/or their interrogatory answers or was one of Plaintiffs' named experts. Plaintiffs' assertion that Goldwind should not be awarded costs in connection with the depositions it took is without merit.

Plaintiffs also make misleading arguments with regards to the other costs at issue. For example, Plaintiffs challenge various costs for Spanish language translations, interpreters and transcripts on grounds that Goldwind's two counsel of record were not Spanish speakers. But Plaintiffs know full well from their own depositions that Goldwind's team included experts, employees and a lawyer who were Spanish speakers. In fact, it was Plaintiffs who insisted on Spanish language transcription and transcripts; the idea that costs related to such a demanded procedure are not recoverable lacks merit.

Moreover, as set forth in detail below, Plaintiffs have ignored and/or failed to respond to law which supports Goldwind's requests for costs, including, *inter alia*, the law which has emerged since the Covid-19 pandemic recognizing that videotaped and remote depositions which use online technology were reasonable and necessary during the pandemic. Goldwind should be awarded its costs as set forth in its Bill of Costs.

**II. ARGUMENT**

    **A.    Contrary to Plaintiffs' argument, there is nothing about the "discovery timeline" which would bar Goldwind's recovery of costs in connection with service of subpoenas, including Letters Rogatory.**

Pursuant to Section 1920(1), a prevailing party is entitled to recovery of costs for clerk and marshal fees, a category which involves, *inter alia*, costs associated with the service of subpoenas, and includes costs incurred for service of Letters Rogatory by the U.S. State Department. (*See*, ECF 183, Goldwind's Memorandum in Support of its Bill of Costs "Opening Memorandum" at P. 5 citing, *Barthco Int'l, Inc. v. DIJFO do Brasil, Ltda.*, 2014 WL 12861825, at *5 (S.D. Fla. May 20, 2014), *report and recommendation adopted*, 2014 WL 12861826 (S.D. Fla. Oct. 24, 2014).) Goldwind thus seeks recovery of $13,650 it incurred in obtaining service though the State Department of Letters Rogatory on multiple entities who were located in Panama and whom Plaintiffs claimed were its potential customers and a potential lender. In arguing that they should be able to avoid paying those costs, Plaintiffs note that the case law cited by Goldwind which upholds the recovery of such costs is not from this circuit and thus that this Court is not required to follow its holding. However, Plaintiffs do not argue that the cited law (*Barthco*) was wrongly decided nor contend that its reasoning was in any way flawed.

Instead of asserting that there is any reason why the costs of State Department service of Letters Rogatory should not, as a general matter, be assessed under Section 1920(1), Plaintiffs

argue that this Court should not permit recovery of those costs in this particular case "in light of the discovery timeline." Specifically, Plaintiffs maintain that Goldwind should be barred from recovery of any[1] costs in connection with the Letters Rogatory because Goldwind did not arrange to have those Letters Rogatory served until August 2021 when discovery was near an end. Plaintiffs maintain that seeking documents from their foreign witnesses and entities at that time was not "reasonable and necessary" because it risked "late receipt" of discovery responses and point out that the response did not come until December 2022, after the summary judgment motion was briefed. (*See*, Plaintiffs' Response at P. 3.) But as set forth in the motion requesting the issuance of Letters Rogatory, Goldwind stated that their purpose was to "secure testimony for use at trial." (*See*, ECF 51, Plaintiff's Motion to Issue Letters Rogatory.) Plaintiffs also fail to mention that, although they complain that Goldwind "sat on its hands" with respect to its motions for the issuance of Letters Rogatory, Plaintiffs' own requests for the issuance of such Letters Rogatory were made on the same day as one of Goldwind's motions (and less than two weeks before Goldwind's second such motion). (ECF 46.)

The reasonableness and necessity of discovery is judged based at the time when the discovery is issued. *See, e.g.*, *Nwoke v. Univ. of Chi. Med. Ctr.*, 2021 WL 3483434, at *2 (7th Cir. Aug. 9, 2021.) At the time that Goldwind requested the issuance of the Letters Rogatory to the entities in Panama, it could reasonably have expected that a response would be made by the time of trial. At that point, discovery was ongoing and no date for summary judgment, let alone trial, had been set. There was nothing about the discovery timeline that would have indicated that the documents would not be received in time for trial. Plaintiffs do not claim to the contrary.

---

[1] In addition to the amount paid the State Department for the Letters to be served in Panama, Goldwind also paid $359.50 to the Clerk of the Court for the necessary apostille for the Letters to be served in Spain.

Plaintiffs also question why the Letters Rogatory that were sent to Panama were "reasonable and necessary" in any event, complaining that Goldwind did not adequately explain the necessity. But based on Goldwind's Motion to Issue Letters Rogatory as well as the Letters Rogatory themselves, Plaintiffs are certainly aware that the Letters Rogatory were directed to entities who were identified by Plaintiffs as i) customers whose relationship with Plaintiffs Goldwind purportedly "intentionally interfered" and ii) a bank involved in discussions relating to the financing of the solar plant project at the center of Plaintiffs' lawsuit. (*See*, ECF. No. 51.) And as noted in the motion to issue the Letters Rogatory, the documents sought were relevant to the issue of: i) whether Goldwind was responsible for any alleged "delay" in Plaintiffs connection to the substation and building its solar plant, thus purportedly interfering with Plaintiffs' ability to enter into contracts to provide electricity; ii) whether Plaintiffs had issues with financing unrelated to Goldwind; or iii) Goldwind's contact (or lack thereof) with any of the parties to whom the Letters Rogatory are directed. (Id.) Plaintiffs do not and cannot make any argument as to why this discovery was not reasonable and necessary. Pursuant to Section 1961(1), Goldwind is entitled to the recovery of the entire $14,172 it seeks for costs in connection with the service of the Letters Rogatory and for the service of a subpoena by a private process server[2].

### B. Goldwind is entitled to its costs incurred in taking depositions and obtaining transcripts.

Goldwind sought a total of $128,564.09 for recovery of "fees of the court reporter." Plaintiffs do not challenge $17,379.15 of this amount but claim that Goldwind is not entitled to the rest, arguing that Goldwind cannot obtain recovery of costs in connection with i) depositions Goldwind took, ii) indexes, iii) depositions taken in Spanish, or iv) actions taken due to the Covid-

---

[2] The private process server was used to obtain the deposition of Brian Blakely, an employee of the Inter-American Bank. Mr. Blakely was specifically identified as a potential witness for Plaintiffs. (See, Opening Memorandum at Blonder Declaration ¶2 and its accompanying exhibit B-2.)

19 pandemic. But as detailed below, Plaintiffs' arguments ignore both the law and the circumstances that existed when the depositions were taken, including the pandemic.

       1.       <u>Goldwind is entitled to recover the costs of the depositions of Plaintiffs' experts and the individuals identified in Plaintiffs' Rule 26 Disclosures or interrogatory Responses.</u>

Plaintiffs do not dispute that a party may recover costs of deposition transcripts which were reasonably necessary under 28 U.S.C. §1920(2). But Plaintiffs insist that Goldwind has not met its burden to show that the depositions noticed by Goldwind were reasonable and necessary and thus they maintain that Goldwind cannot recover for the costs of transcripts. As detailed below, this argument is nonsensical: the depositions of all of the witnesses noticed by Goldwind were necessary because, as Plaintiffs know, of the eleven witnesses deposed by Goldwind:

- Three (3) were Plaintiffs' own identified expert witnesses (Hoyos, Rose, and Klienrichert);

- Four (4) were identified in Plaintiffs' Rule 26 Disclosures as individuals who Plaintiffs intended to potentially use to support their claims. (Lorente, Galdon, Pernas[3], and Espino); and

- Four (4) were identified in Plaintiffs' interrogatory answers as parties with knowledge of and material involvement with key matters. (Jimenez, Ruiz, Blakely and Furones).

Plaintiffs have not, and could not, make any credible argument as to why it was not reasonable and necessary to take any of these depositions. They do not even try to claim that the depositions of experts or the deposition of a party identified on a Rule 26 disclosure was not reasonable and necessary as a matter of law. As their only "example" of Goldwind's supposed inability to establish reasonableness and necessity, Plaintiffs point to the deposition of Ronald Jimenez, noting that he was not listed on Plaintiffs' Rule 26 disclosures and insist that they were

---

[3] Lorente, Galdon, and Pernas were also deposed after being named as Avanzalia's representatives for 30(b)(6) depositions.

"surprised by Goldwind's insistence on deposing Mr. Jimenez, as Mr. Jimenez was not an employee of Avanzalia until months after Goldwind sold the El Coco substation." (Plaintiffs' Response to Bill of Costs at P. 5, f.n. 3.) This argument is disingenuous.

As Plaintiffs are fully aware, while Mr. Jimenez was not disclosed pursuant to Rule 26, he was **explicitly identified by Plaintiffs as a person with involvement in and knowledge of the key issues in this case.** Indeed, in their Response to Goldwind's interrogatories, Plaintiffs identified Mr. Jimenez as someone with "*material*[4] involvement in Plaintiffs' Solar Project" with respect to their "connection to the substation." (*See* attached Exh. A. at Interrogatory No. 16, emphasis supplied.) And connection of Plaintiffs' substation was a central issue in the case. During the litigation, Plaintiffs contended that once Goldwind was no longer the owner of the substation they were able to easily connect to the electrical grid and asserted that this fact "proved" wrongdoing by Goldwind. (*See, e.g.* Avanzalia 30(b) (6) Deposition at Pp. 139-140, Exhibit B, hereto) Plaintiffs were the ones who identified Mr. Jimenez as having material information regarding the key issue of interconnection. The idea that his deposition, was not reasonable or necessary is meritless.

The same is true of the other deponents taken by Goldwind who were not either experts or part of Plaintiffs' Rule 26 Disclosures: Mr. Ruiz, Mr. Blakely and Mr. Furones. Mr. Ruiz was identified multiple times in Plaintiffs' interrogatory Responses as a person with material involvement in, and knowledge of, *inter alia*, i) Goldwind's purported "delaying Plaintiffs' ability to access UEP1's substation," ii) Plaintiffs' efforts to obtain licenses, an Access Contract, and a Supervision Contract for the substation, iii) Plaintiffs' communication with the Panamanian Regulators, and iv) Plaintiffs' capability and plans to schedule and design and construct the

---

[4] Plaintiffs' responses to interrogatories explicitly stated that the identified individuals were not ones with only "minimal or temporary" involvement and that Plaintiff was limiting those identified to individuals with "material" involvement.

physical connection to the Solar Plant. (*See*, Exh. A., Interrogatory Responses at 4, 7, 8, and 12.) Such identification obviously made Mr. Ruiz's deposition "reasonable and necessary." Mr. Blakely was also identified in multiple interrogatory answers as a person with knowledge of key issues in the case including, *inter alia*, Plaintiffs' development and financing of the substation at issue. (*Id*. at Responses 12 and 16.) The deposition of Mr. Furones was also "reasonable and necessary" because, as Plaintiffs know, he was the representative of Fistera, a company which Plaintiffs identified as the entity which made an offer to purchase the Solar Project and which offer was, Plaintiffs claimed, allegedly derailed by Goldwind. (*Id*. at Responses 2, 14). Plaintiffs have not even attempted to explain why the costs for these witnesses were not "reasonable and necessary.

Goldwind is entitled to recover its costs in connection with all of the depositions it took, as well as those it defended.

2. <u>Goldwind is entitled to recover the costs of the deposition indexes.</u>

Plaintiffs assert that Goldwind should not recover the costs charged for pages of the deposition transcripts that contain word indexes and cite a more than decade old case which did not allow recovery for word indexes "because they were obtained only for the convenience of counsel." (*See*, Plaintiffs' Response Pp 2-3, citing *Thayer v. Chiczewski*, 07 CV 1290, 2010 WL 3087447, at *9 (N.D. Ill. Aug. 4, 2010).) However, Plaintiffs do not claim that the transcripts could have been obtained without the word indexes. And recent case law has recognized that word indexes are now "are customarily included in transcripts" and not a separate optional charge incurred by a party for its convenience. *See*, *Vaughn v. Eichorn*, 4:19-CV-01201-JAR, 2021 WL 6091096, at *2 (E.D. Mo. Dec. 23, 2021) (allowing recovery an index when as was true here, there

7

was no charge for the index separately.) The Seventh Circuit has recently approved the imposition of the cost of a transcript index. *Escamilla v. United States*, 62 F.4th 367 (7th Cir. 2023).

       3.    <u>Goldwind is entitled to recover the costs in connection with Spanish deposition transcripts.</u>

As explained in Goldwind's Opening Memorandum, based on a protocol demanded by Plaintiffs, when depositions in this case were taken of Spanish speakers there were two court reporters present (one transcribed the Spanish, the other transcribed the translated English) and transcripts were generated in both English and Spanish. (*See*, Opening Memorandum at P. 6 and attached Exh. B, Blonder Dec. at ¶5.) In their Response, Plaintiffs do not contest the fact that they were responsible for the presence of the Spanish court reporter. Nor do they dispute that they chose to have transcripts created both in English and Spanish. But despite that fact that Plaintiffs created these costs, they insist that costs of a Spanish court reporter and transcripts (which were unquestionably incurred by Goldwind) were somehow not "reasonable and necessary." In support of this assertion, Plaintiffs point to the fact that Goldwind's two *counsel of record* were not Spanish speakers. But, as Plaintiffs know from the depositions they attended, Goldwind's litigation team included many Spanish speakers, including an attorney, Goldwind employees and experts. These team members were certainly available for review of Spanish language transcripts and Goldwind could certainly turn to any Spanish speaking consultant or vendor before trial to review any issues surrounding translation---but it would need the transcript to do so. This issue was likely to arise given Plaintiffs counsel's repeated and heated objections to the translations performed by the professional translator. (Plaintiffs' Response does not deny that such objections occurred.

Moreover, Goldwind's Spanish speaking witnesses were entitled to review a copy of the transcript, which was generated and in Plaintiffs' possession, and could be used against them at trial. Plaintiffs also claim that the Spanish language costs of Mr. Buitrago' deposition were not

"reasonable and necessary" because Mr. Buitrago speaks English. This claim is without merit. As Mr. Buitrago testified, while he does speak English, he is most comfortable in his native Spanish and was certainly entitled to be deposed in that language. (*See*, Exh. C, Buitrago Deposition at P. 95.) The bottom line is that Plaintiffs were the ones to demand that there be a Spanish language court reporter and obtained the resulting transcripts for themselves. Under these circumstances, Plaintiffs have no basis for complaining about Goldwind's recovery of the costs it necessarily incurred as a result.

    4. <u>Goldwind is entitled to recover the costs in connection with Realtime Services.</u>

As set forth in Goldwind's Memorandum in support of its Bill of Costs, courts today routinely permit recovery of Realtime service when, as here, there were depositions that were taken in a foreign language. (*See*, Opening Memorandum at P. 8, citing *Chamberlain Group, Inc. v. Techtronic Indus. Co., Ltd.*, 315 F. Supp. 3d 977, 1022 (N.D. Ill. 2018), *aff'd in part, vacated in part, rev'd in part sub nom. Chamberlain Group, Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341 (Fed. Cir. 2019) (Realtime costs recoverable, given the necessity to ensure accurate and precise recording of testimony); *See also*, *Motorola Sols., Inc. v. Hytera Communications Corp. Ltd.*, 1:17-CV-01973, 2021 WL 3489813, at *4 (N.D. Ill. Aug. 6, 2021), *appeal dismissed,* 21-2635, 2022 WL 671458 (7th Cir. Feb. 16, 2022) (Allowing recovery of Realtime charges when depositions taken in a foreign language or when issues were of a technical nature.) Plaintiffs give a cursory objection to the recovery of fees for the English language Realtime service, but do not even bother to address the case law above or explain why this Court should not follow it.

Plaintiffs do object to the costs of the Spanish language service by raising once again, the point that Goldwind's counsel of record were not Spanish speakers. But as noted above, an attorney on Goldwind's team did speak Spanish and sat in on a deposition (and was available on an 'on

9

call' basis for others). Plaintiffs had access to this feed and were able to use it as part of their numerous objections to translation. Under those circumstances, Goldwind's order of the Realtime feed in Spanish was "reasonable and necessary" and Goldwind should be entitled to recover all of its Realtime costs.

     5.     <u>Goldwind is entitled to recover the costs in connection with rough drafts.</u>

As explained in Goldwind's Memorandum in Support of its Bill of Costs, Goldwind is entitled to recover the rough transcript costs because of the compressed discovery schedule. (*See*, Opening Memorandum at P. 9.) Plaintiffs do not question that costs of rough transcripts are recoverable when a discovery is compressed and concede that Goldwind is entitled to $4,822.15 for rough transcripts. Yet, Plaintiffs insist that in a few instances cases (representing $1,333.85 in costs) discovery was not sufficiently compressed to require a rough transcript. (*See*, Response p. 6.) However, this argument is without merit based on the fact that deposition dates were still in flux and the critical nature of some of the depositions.

For example, one of the depositions Plaintiffs point to is the deposition of Enrique Lorente (which, Plaintiffs neglected to tell this Court, was a 30(b)(6) deposition). Mr. Lorente's 30(b)(6) deposition occurred on September 9, 2019. There were several depositions taken in the following month- Saad Qais, Chris Wittwer, and Jorge Buitrago- and, in general, the parties were planning a compressed and intensive discovery schedule. Goldwind needed to quickly review Mr. Lorente's assertions which were being made on behalf of Plaintiffs in order to fully prepare to defend the depositions and all relevant discovery. It was thus reasonable for Goldwind to order Mr. Lorente's rough draft transcript. The cost of Mr. Lorente's rough draft ($735) is more than half the total rough draft costs to which Plaintiffs object. Goldwind should be awarded all of its costs in connection with the rough drafts or at a minimum, $5,557.15.

6. <u>Goldwind is entitled to recover the costs in connection with videotaped depositions.</u>

As discussed at length in Goldwind's Memorandum, because the Covid-19 pandemic wreaked havoc on the world in 2020, courts have recognized the need for videotaped depositions to preserve testimony in light of the uncertainty of being able to produce witnesses at trial. Courts have thus routinely (in these very non-routine times) permitted full recovery of the costs of videotaping depositions. Goldwind cited numerous cases which support their right to recover the cost of the videotaped depositions which were taken in the Fall of 2021 through the Spring of 2022. *See*, Opening Memorandum at Pp. 10-11, *Yates v. City of Chicago*, 18 C 2613, 2021 WL 6063862, at *2 (N.D. Ill. Dec. 22, 2021), *aff'd sub nom. Yates v. City of Chicago, Illinois*, 58 F.4th 907 (7th Cir. 2023); *Bell v. Am. Int'l Indus.*, 2022 WL 4095903, at *5 (M.D.N.C. Sept. 7, 2022); *Said v Mayo,* 2022 WL 598210; *Walsh v. Bowers*, 2021 WL 6755018, at *4 (D. Haw. Nov. 18, 2021), *report and recommendation adopted as modified,* CV 18-00155 SOM-WRP, 2022 WL 355126 (D. Haw. Feb. 7, 2022.)

Plaintiffs fail to address or even acknowledge this case law, citing only one pre-pandemic case which did not permit recovery of videotaped depositions in addition to the costs of transcripts. Plaintiffs instead argues that the Goldwind's recovery of videotaping costs should be denied in the absence of proof as to the "restrictions that existed *at the time* the depositions were scheduled or conducted." (Response at P. 6, emphasis supplied) But this argument blatantly ignores the logic behind the caselaw which is firmly rooted in the future *uncertainty* caused by the pandemic. *See*, *Yates* *2 (N.D. Ill. Dec. 22, 2021) (videotaping was reasonable and necessary "because these depositions were conducted in the midst of the pandemic, *there is no telling whether theses witness would be available at trial."*); *Bell,* at *5; *Said* 2022 WL 598210 ("hedging against witness unavailability because of illness, travel restrictions, or other impediments during this *period of heightened uncertainty* [during the Pandemic] seems especially prudent and supports the

11

conclusion that Defendants "necessarily obtained" video recordings of …depositions."); *Walsh v. Bowers*, 2021 WL 6755018, at *4 ("the Court accepts Defendants' explanation that video depositions were particularly necessary for use in this case based on when the depositions were taken—in the midst of the ongoing Covid-19 pandemic *where the ultimate format of the trial and witness presentation remained uncertain*.").

In a statement that defies the realities, Plaintiffs gripe that "Goldwind made no inquiry as to whether Avanzalia's party witnesses would be able to travel for any potential trial." (Response P. 6.) But of course, Plaintiffs could have no control over a government's future lockdowns or restrictions on international travelers. Moreover, Plaintiffs do not deny that there were travel restrictions affecting Spain at various times during the pandemic. Plaintiffs' argument on this score is without logic. So too is their assertion that numerous individuals should have been considered to be within the subpoena power of the court because they happened to be employees of a party at the time of their deposition. Trial was likely at least a year or more away when the depositions occurred. Obviously, no employee is subject to indentured servitude; there was no way of knowing whether those employees would remain under the control of a party. Given the fact that most of the witnesses deposed by Goldwind resided overseas, it could not rely on the subpoena power of this Court. And, as noted, neither the parties, nor even this Court, could control government restrictions on travel.

During the pandemic era, it was "reasonable and necessary" to obtain both transcripts and videotaped depositions and courts today thus allow for both costs to be recovered under Section 1921. *See*, *Cnty. of Cook v. Bank of Am. Corp.*, 14 C 2280, 2023 WL 2283251, at *2 (N.D. Ill. Jan. 27, 2023) (permitting recovery of both transcript and videotaping costs based on uncertainty created by the pandemic); *Black v. Wrigley*, 17 C 101, 2020 WL 4437677, at *26 (N.D. Ill. Aug.

12

3, 2020), *aff'd,* 997 F.3d 702 (7th Cir. 2021) ("reasonable for party to request both printed transcripts and a recording of a deposition where the deponent was outside the subpoena power of the Court and therefore could not have been compelled to testify at trial."); *See* also, *Said v. Mayo*, Id, citing , *Genuine Enabling Tech. LLC v. Nintendo Co.*, No. C19-00351-RSM, 2021 WL 211536, at *3 (W.D. Wash. Jan. 21, 2021) (collecting cases); *Jacam Chem. Co. 2013, LLC v. Shepard*, 1:19-CV-093, 2023 WL 1992602, at *2 (D.N.D. Feb. 14, 2023) (noting pandemic issues and holding that "video depositions are often necessary for trial while transcripts are necessary to support or defend against motions.") Goldwind should be awarded all of its costs incurred for videotaped depositions[5].

    7.    <u>Goldwind is entitled to recovery of the court reporter's overtime charges.</u>

As discussed in Goldwind's Opening Memorandum, overtime costs are recoverable under Section 1920. Those costs were necessitated largely by the fact that the depositions were taken in a foreign language in overseas time zones. *Yates v. City of Chicago*, 18 C 2613, 2021 WL 6063862, at *2 (N.D. Ill. Dec. 22, 2021), *aff'd sub nom. Yates v. City of Chicago, Illinois*, 58 F.4th 907 (7th Cir. 2023.) Plaintiffs do not challenge this law but assert that Goldwind should not be entitled to **any** overtime charges despite pointing only to what they claim was a lack of necessity with respect to less than 1.5 percent of those changes ($262) of the total $22,186 of charges incurred. Thus, at a minimum Goldwind is entitled to recovery of $21,924.00 for overtime charges pursuant to

---

[5] On page 7 of their Response, Plaintiffs assert that three witnesses were deposed supposedly "for reasons unrelated to the claims at stake in this case" and refer to the depositions of the individuals deposed regarding purportedly missing data (Noble, March, and Dzyacky). But Plaintiffs were the ones who took and videotaped these depositions, and a hearing could most certainly have been ordered by this Court regarding these issues. For this reason alone, Goldwind's obtaining the videotaped versions was "reasonable and necessary." *Cooper v. City of Chicago*, 16 C 3519, 2018 WL 3970141, at *11 (N.D. Ill. Aug. 20, 2018) ("party would be ill-advised not to obtain a copy of a video deposition if it knows that its opponent possessed video tapes of the same.") Moreover, Plaintiffs were attempting to use those depositions in their efforts to obtain sanctions including an adverse inference at trial.

Section 1920.[6]

> 8. Goldwind is entitled to the recovery of the costs charged by the court reporter for technical and administrative costs in connection with remote <u>depositions.</u>

As set forth in Goldwind's Memorandum, courts regularly permit recovery of technical and administrative costs associated with depositions that were conducted remotely over Zoom or other equivalent electronic means during the pandemic. As the cases cited uniformly hold, those costs sought were considered a "necessity not a convenience" during the pandemic and thus are recoverable under Section 1921. (*See*, Memorandum at Pp. 13-14, citing *DeBoever v. Mellon Investments Corp.*, 2022 WL 16963803, at *3 (D. Mass. Nov. 16, 2022)); *See* also, *Versfelt v. Sanza Food Serv., LLC*, 20-61423-CIV, 2022 WL 2441314, at *3 (S.D. Fla. June 17, 2022), *report and recommendation adopted,* 20-61423-CIV, 2022 WL 2439092 (S.D. Fla. July 5, 2022); *Yates v. City of Chicago*, 18 C 2613, 2021 WL 6063862, at *2 (N.D. Ill. Dec. 22, 2021), *aff'd sub nom. Yates v. City of Chicago, Illinois*, 58 F.4th 907 (7th Cir. 2023); *Africano v. Atrium Med. Corp.*, 17-CV-7238, 2022 WL 1989450, at *8 (N.D. Ill. June 6, 2022; *Bohner v. Union Pac. R.R. Co.*, 2022 WL 970872, at *6 (E.D. Mo. Mar. 31, 2022.) However, once again, Plaintiffs shut their eyes to this law and fail to even discuss it.

Instead, Plaintiffs complain that Goldwind has not provided sufficient explanation, even though its counsel provided a declaration stating that the charges related to administrative and technical costs charged by the court reporter in order to provide video conferencing deposition services, including technology for the sharing of exhibits. (*See*, ECF 183-2, Blonder Dec.)

---

[6] Plaintiffs only other real complaint about overtime charges is with respect to the supposedly "identical charges" for certain witnesses, referring only to charges of $56.25 for both Enrique Lorente and Ramon Pernas. But as the referenced invoice indicates, a total $112 overtime charge was accessed by the court reporter to both their depositions and thus Goldwind split the charges between them. (See ECF 182-2 at P. 60.) There is no reason why Goldwind should not be entitled to recovery of this small cost.

Plaintiffs do not provide this Court with any evidence that these charges were not as represented, nor do they claim that Goldwind could have conducted a remote deposition without incurring these charges. Under the law cited above, which developed during the pandemic, Goldwind is thus entitled to recovery of all of its costs incurred in connection with remote depositions.[7]

    9.    <u>Goldwind is entitled to the recovery of the costs of oral i interpretation.</u>

As set forth in Goldwind's Opening Memorandum, it is entitled to recovery of the costs of oral interpreters who translated depositions taken in Spanish. (Opening Memorandum at P.17) Plaintiffs object and insist that there should be no recovery of any amount for interpretation because the court reporting service categorized these charge as "Translation and Interpretation" and costs for document translation (as opposed to oral interpretation) are not recoverable. (Response Pp. 11-12.) However, Goldwind's counsel attested in his Declaration that **all** of the $19, 744,25 sought pursuant to Section 1920(6), were for **oral interpreters**—not document translation. (ECF. 183-2 at ¶ 4.) Plaintiffs have not submitted any evidence to the contrary. Goldwind is entitled to recovery of the entire amount sought for oral interpretation. *Gutierrez v. P.A.L., Ltd.*, 2012 WL 2993896, at *3 (N.D. Ill. July 20, 2012) ("28 U.S.C. § 1920(6) provides that the compensation of interpreters may be taxed as costs where services were reasonably necessary.")

---

[7] Once again ignoring the reality of the world, Plaintiffs suggest that individuals within this Court's subpoena power or who were under the control of a party should have been required to be deposed in person. Doing so would have increased the risk of illness at the height of the Omicron surge. In any event, it should be noted that the remote depositions saved Plaintiffs from having to either incur travel costs or pay travel costs for Goldwind's expert witnesses. See, *Hillmann v. City of Chicago*, 2017 WL 3521098, at *10 (N.D. Ill. Aug. 16, 2017("Collectively, 28 U.S.C. §§ 1821 and 1920(3) authorize the award of costs to reimburse witnesses for their reasonable travel and lodging expenses…" and "courts in this District have routinely awarded costs for expert witnesses' travel expenses.") Given that Plaintiffs deposed five of Goldwind's experts, none of whom were located in Chicago, and two of whom were located in Panama, these expenses -which Plaintiffs avoided by the use of remote depositions- would likely have been substantial.

Plaintiffs' objections, which are not based on any assertion that the oral interpretation were unnecessary, are meritless.

>   C. **Goldwind is entitled to recovery of the small portion of the vast cost of document translation it incurred pursuant to Section 1920(6).**

Goldwind has not sought most of the costs that it incurred in translating the large number of Spanish language documents in this case. As explained in Goldwind's Memorandum, it seeks recovery for only a tiny subset of those costs and does so pursuant to Section 1920(4) ("Subsection 4") and cited case law in support of such recovery. (*See*, Opening Memorandum at P. 15, citing, *BookIT OY v. Bank of Am. Corp.*, 2019 WL 13156690, at *1 (N.D. Tex. Sept. 3, 2019) citing, *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560 (2012).) Rather than discuss this case law involving **Subsection 4**, Plaintiffs cite to inapposite law involving **Subsection 6** of Section 1920.

While Plaintiffs also assert that Goldwind did not provide sufficient explanation of the documents involved, Goldwind's Memorandum made clear that the documents translated involved i) the expert report of Goldwind's Panamanian law expert and ii) the translated documents that were actually submitted to this Court in Goldwind's summary judgment papers. (Opening Memorandum at Pp. 14-17.) Other than to cite to the irrelevant law with respect to Subsection 6, Plaintiffs do not even discuss the expert report. However, Plaintiffs claim they could not discern what the summary judgment documents involved and thus that recovery of those costs are barred. This assertion is belied by the face of the summary judgment motion and its supporting documentation. The summary judgment motion contained just eight documents translated at Goldwind's expense. Half of those were identified by their Bates number on the translation service's invoice. (*See*, ECF. 182-3 at P. 89.) The remaining four were the only other Goldwind translated documents submitted to this court (they were part of Exhibit 4 of Goldwind's 56.1 Statement and were identified by file number by the translation service.) (Id. at P. 90.) As a quick

16

review of those four documents demonstrates, all involved filings with, or orders of, the Panamanian Regulator which were critical to Goldwind's argument for the application of preclusive effect to that regulator's orders[8]. Goldwind is entitled to the costs of translation of this limited set of documents pursuant to Section 1920(4).

      **D.    This Court should not stay a decision or enforcement of a ruling on the Bill of Costs.**

Finally, Plaintiffs have requested that this Court stay a decision on Goldwind's Bill of Costs, or in the alternative, enforcement of the award of the costs. This Court should deny those requests. A stay of an award of costs is not provided by rule or by statute and "courts in this district which have been faced with such requests have denied such stays on the grounds that they are not provided by statute and would serve no useful purpose." *Hovde v. ISLA Dev. LLC*, 18-CV-7323, 2021 WL 7161195, at *1–2 (N.D. Ill. Dec. 8, 2021, citing *Sembos v. Philips Components*, 2003 WL 22533579, at *1 (N.D. Ill. Nov. 6, 2003.)

In the *Hovde* case the court recognized that some courts have stayed payment of costs pending appeal, but noted that "a district court is under no obligation to stay a bill of costs pending appeal." *Id.* And the court noted that in many where courts did so the "judgment holders did not object to the stay." *Id.* As other courts which have refused to stay enforcement of a judgment for costs have noted, "A stay is an intrusion into the ordinary processes of administration and judicial review and a court must consider multiple factors in determining whether to enter a stay including (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay

---

[8] File 6 was "2016-03-09 ASEP Grants AVZ's Request to Resolve the Dispute"; File 14 is a sub-exhibit of Ex. 4. It is titled "2017-06-18 Avanzalia's Appeal Against the June 5, 2017 Order"; File 15 was "2017-07-12 UEP Objections and Comments to UEPI's Appeal"; and File 19 was "2017-10-03 UPEI Brief Extending the Objections to AVZ's Studies." All were bookmarked in Goldwind's 56.1 statement, ECF. 130.

will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Equal Employment Opportunity Comm'n v. Rogers Behavioral Health*, 2022 WL 5117712, at *1 (E.D. Wis. Oct. 4, 2022) *See* also, *Curtis v. Costco Wholesale Corp.*, 13 C 3432, 2015 WL 2260723, at *3 (N.D. Ill. May 12, 2015) (refusing stay of enforcement of costs when a plaintiff "has not shown a likelihood of success on the merits of his appeal or presented sufficient justification to warrant any delay in the enforcement of the award of costs.") Plaintiffs have not even made an effort to discuss any of the relevant factors. Their request for a stay of either decision or enforcement should be denied.

## IV. CONCLUSION

Pursuant to Rule 54(d), Local Rule 54.1 and this Court's entry of Judgment in its favor, Goldwind requests recovery of the amounts of costs set forth in its Bill of Costs and supported by this Reply.

Dated: March 28, 2023            Respectfully submitted,

**GOLDWIND USA, INC., d/b/a**
**GOLDWIND AMERICAS,**

By: */s/Josh M. Leavitt*
     One of Its Attorneys

Steven P. Blonder (#6215773)
Josh M. Leavitt (#6191417)
MUCH SHELIST, P.C.
191 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
(312) 521-2000
sblonder@muchlaw.com
jleavitt@muchlaw.com

**CERTIFICATE OF FILING AND SERVICE**

Josh M. Leavitt, an attorney, certifies that on March 28, 2023 the foregoing ***Defendant Goldwind's Reply in Further Support of its Motion for Bill of Costs*** was electronically filed with the Clerk of the U.S. District Court, Northern District of Illinois, Eastern Division by using the CM/ECF system, which will send notification of such filing to the following recipients:

W. Gordon Dobie
Ricardo E. Ugarte
Kelly E. Mannion
Michael E. Lill
Winston & Strawn, LLP
35 West Wacker Drive
Chicago, Illinois 60601
wdobie@winston.com
rugarte@winston.com
kmannion@winston.com
mlill@winston.com

*/s/ Josh M. Leavitt*