IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AVANZALIA SOLAR, S.L. and AVANZALIA PANAMA, S.A., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Case No. 20 C 5035 |
| GOLDWIND USA, INC., d/b/a GOLDWIND AMERICAS, | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Avanzalia Solar, S.L. and Avanzalia Panama, S.A. (Avanzalia) sued Goldwind USA, Inc. (Goldwind) for tortious interference with prospective economic advantage and tortious interference with contract. In brief, Avanzalia alleged that it was unable to sell electricity from its Panamanian solar energy project because Goldwind refused to allow it to connect to Panama's national electric grid via a substation that Goldwind owned. The Court granted summary judgment for Goldwind on all claims. Under Federal Rule of Procedure 54(d), Goldwind has petitioned the Court for costs totaling $182,661.56. Avanzalia objects to nearly all of Goldwind's requested costs. For the reasons below, the Court upholds some of Avanzalia's objections to Goldwind's bill of costs and overrules the others.

Discussion

A prevailing party generally is entitled to recover costs. Fed. R. Civ. P. 54(d)(1). The Supreme Court has held that 28 U.S.C. § 1920 "defines the term 'costs' as used in

Rule 54(d)." *Taniguchi v. Kan Pac. Saipan Ltd.*, 566 U.S. 560, 565 (2012). "[A] particular expense must fall into one of the categories of costs statutorily authorized for reimbursement." *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000). In addition, "[a]ny party seeking an award of costs carries the burden of showing that the requested costs were necessarily incurred and reasonable." *Trs. of Chi. Plastering Inst. Pension Tr. v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009).

A.  **Costs claimed under section 1920(1)**

Goldwind seeks to recover $14,172 under section 1920(1), which permits courts to award costs for "fees of the clerk and marshal." Specifically, Goldwind seeks (1) $162.50 in fees paid to private process servers, (2) $13,650 in fees paid to the U.S. State Department for the service of letters rogatory on six Panamanian entities; and (3) $359.50 in fees paid to the Clerk in connection with the preparation of the letters rogatory.

1.  **Private process server fees**

Goldwind seeks $162.50 in fees paid to private process servers. The Seventh Circuit has held that section 1920(1) "permit[s] recovery of expenses that do not exceed what the marshal would have charged, for the tasks marshals are authorized to perform" under 28 U.S.C. § 1921(a). *Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir. 1996). This includes "service costs that do not exceed the marshal's fees, no matter who actually effected service." *Id.* Avanzalia does not object to Goldwind's request for $162.50 private process server fees. The Court therefore taxes these costs to Avanzalia.

2

2. **U.S. State Department fees**

Goldwind seeks $13,650 in fees that it paid to the State Department for the service of letters rogatory on six Panamanian entities that were outside the subpoena power of the Court.  A letter rogatory is "a formal request from a court in which an action is pending, to a foreign court to perform some judicial act" such as "the serving of a summon, subpoena, or other legal notice."  22 C.F.R. § 92.54.  Goldwind argues that the fees are akin to permissible private process server fees and therefore are recoverable under section 1920(1).  But unlike private service of process, the transmission of letters rogatory to foreign judicial authorities is not a "task[ ] marshals are authorized to perform."  *Collins*, 96 F.3d at 1060.  As a matter of international law, letters rogatory must be "transmitted via the diplomatic channel" or via other methods established by treaty.  *See* U.S. Dep't of Just., Crim. Resource Man. § 275 (2020).  The requested expenses were therefore neither paid to "the clerk [or] marshal," 28 U.S.C. § 1920(1), nor paid to a third party for functions that those officials were "authorized to perform."  *Collins*, 96 F.3d at 1060.  Moreover, the Supreme Court has cautioned that courts should not "cast[ ] aside the ordinary meaning of the various items enumerated in the costs statute."  *Taniguchi*, 566 U.S. at 573.  Because there is no basis in section 1920(1) for taxing the State Department fees as costs, the Court denies Goldwind's request.

3. **Clerk of Court fee**

Goldwind also seeks $359.50 in fees it paid to the Clerk of Court to obtain the letters rogatory that it sent to the State Department for processing.  Avanzalia does not dispute that this sum is taxable under section 1920(1) as a "fee[ ] of the clerk."  Rather,

3

it argues that Goldwind's letters rogatory were not reasonable and necessary to the litigation. To support its argument, Avanzalia emphasizes that Goldwind did not file its motion for letters rogatory until August 9, 2021, which was the scheduled deadline for initiating foreign discovery requests. Avanzalia argues that Goldwind's supposed lack of diligence in securing the letters shows that Goldwind did not consider them to be reasonable and necessary to the litigation. But Avanzalia fails to mention that it, too, waited until the August 9 deadline to move for its own letters rogatory. The Court overrules Avanzalia's argument that the timing of Goldwind's motion precludes the reasonableness of its expenses. The bottom line is that the motion was timely even if it was filed at the deadline. Avanzalia otherwise does not dispute Goldwind's explanation that the six Panamanian entities were necessary discovery targets because Avanzalia had named them as entities relevant to its theory of damages. The Court therefore taxes to Avanzalia the $359.50 paid to the Clerk.

**B.     Costs claimed under section 1920(2)**

Goldwind requests $128,564.09 under section 1920(2), which permits courts to award costs for "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." Goldwind seeks to recover numerous deposition-related expenses, including (1) final transcripts, (2) court reporter appearance fees, (3) court reporter overtime fees, (4) rough transcripts, (5) video recordings of depositions, (6) Realtime feeds, and (7) fees associated with conducting remote depositions via videoconferencing software. Avanzalia does not dispute that section 1920(2) authorizes recovery of these costs. Rather, it argues that some of the claimed expenses were not reasonable or necessary for various reasons.

1.  **Final transcripts**

Goldwind requests $32,987.30 in costs for final transcripts of depositions. Avanzalia raises several objections. First, although Avanzalia concedes that Goldwind is entitled to costs for the English-language transcripts of depositions noticed by Avanzalia, it objects to the costs associated with the index pages of those transcripts. Second, it objects to all transcript costs incurred for depositions that Goldwind itself noticed. Third, Avanzalia objects to all costs related to final Spanish-language transcripts.

a.  **Indexes**

Avanzalia concedes that it owes Goldwind $9,964.50 for final English-language transcripts of depositions that Avanzalia noticed. But it argues that it should not be responsible for an additional $614.60 in per-page charges for the index pages appended to these transcripts. *See* Pl.'s Resp., Ex. 1-3. The Seventh Circuit has held that district courts have discretion to award costs under section 1920(2) for deposition transcript indexes. *See Escamilla v. United States*, 62 F.4th 367, 376 (7th Cir. 2023) ("In some circumstances, word indices can be essential to understanding the content of a deposition transcript. Accordingly, we cannot say that the district court abused its discretion in including the index pages with the transcript costs."). But the prevailing party still must show that the indexes were reasonable and necessary rather than a matter of convenience. *Cf. Little*, 514 F.3d at 702 (stating that "courts may not tax the costs of transcripts . . . provided merely for convenience of the requesting attorney").

Goldwind argues that indexes are commonly included with deposition transcripts today. It offers no explanation, however, for why they were reasonable and necessary

5

in this case. At best, it argues that Avanzalia "do[es] not claim that the transcripts could have been obtained without the word indexes." Def.'s Reply at 7. But it is Goldwind's burden to show that its costs were reasonable and necessary, not Avanzalia's. *See Trs. of Chi. Plastering Inst. Pension Tr.*, 570 F.3d at 906. The Court declines to award Goldwind the contested $614.60 for the index pages; Avanzalia is therefore taxed $9,964.50 for the final transcripts of the English-language depositions that it noticed.[1]

### b. Depositions noticed by Goldwind

In a single sentence, Avanzalia argues that it should not be responsible for the transcript costs for *any* deposition noticed by Goldwind because "Goldwind failed to meet its burden to show that such deposition testimony was reasonable and necessary for Goldwind's use in the litigation." Pl.'s Resp. at 4. The Court rejects this underdeveloped argument. "The proper inquiry is whether the deposition was reasonably necessary to the case at the time it was taken." *Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 455 (7th Cir. 1998) (internal quotations omitted). Goldwind asserts that it deposed only Avanzalia's expert witnesses, individuals Avanzalia identified in its Rule 26(a)(1) disclosures as potentially supporting its claims, Avanzalia's corporate representatives under Rule 30(b)(6), and individuals Avanzalia identified as having material knowledge or involvement in key matters. Absent any countervailing

---

[1] Avanzalia's index objection presumably could also apply to the other transcript costs at issue in this case, such as the English-language transcripts of depositions noticed by Goldwind and the Spanish-language transcripts. But Avanzalia has raised this objection and calculated the associated costs *only* for the final English-language transcripts of depositions that it noticed. *See* Pl.'s Resp., Ex. 1-3. The Court therefore deducts only the $614.60 in index charges that Avanzalia has identified in its objections.

evidence (which Avanzalia does not provide), this is sufficient to show that the depositions were reasonably necessary at the time they were taken.

      Avanzalia advances a more specific argument with respect to Goldwind's decision to depose Ronald Jimenez, an Avanzalia employee. It claims that this deposition was unreasonable because Avanzalia did not hire Jimenez until six months after Goldwind sold the substation at the root of the parties' dispute. Goldwind counters that in response to an interrogatory, Avanzalia identified Jimenez as a person with material involvement in the subject matter of the case. Def.'s Reply at 6. Specifically, Avanzalia stated that Jimenez was an "employee . . . with material involvement in [its] Solar Project," with respect to the "substation connection." Def's Reply, Ex. A at 24. In addition, Avanzalia's theory of liability in this case relied in part on events occurring after Goldwind sold the substation. *See, e.g.*, Def.'s Reply, Ex. B at 2 (Avanzalia representative testifying during deposition that "as soon as Goldwind left the project . . . the project was finished in a few months"); Pl.'s Mem. in Opp. to Summ. J. at 24 (supporting its argument that it "had a reasonable expectation of selling [its] electricity on the open spot market once connected to the national grid" by pointing to the fact that it has "actually been selling electricity on the open market since they connected their solar plant in January 2021"). The fact that Jimenez began working for Avanzalia after Goldwind sold the substation therefore does not foreclose the possibility that he had material information about subsequent developments relevant to Avanzalia's claims. Because Goldwind has shown that the depositions it noticed were reasonable and necessary to the litigation and Avanzalia otherwise does not oppose the final transcript costs, the Court overrules Avanzalia's objection.

### c. Spanish transcripts

Goldwind seeks to recover $11,601.70 in costs for the Spanish-language transcripts of certain depositions. According to Goldwind, two court reporters attended these depositions. "One court reporter recorded everything said in English, including the words spoken by the oral interpreters; the other recorded everything said in Spanish." Def.'s Bill of Costs at 6. Avanzalia briefly argues that Goldwind is not entitled to any costs for final transcripts in Spanish because "[n]either of Goldwind's counsel of record . . . speak or read Spanish." Pl.'s Resp. at 5. But Goldwind stated in its bill of costs that the bilingual reporting protocol "was established by Plaintiffs' counsel," and Avanzalia does not dispute that assertion. Avanzalia thus cannot claim now that those costs were not reasonable and necessary. In addition, Goldwind says it had Spanish-speaking lawyers on its team in addition to its non-Spanish-speaking counsel of record, even if they did not actively attend the depositions. The Court overrules Avanzalia's objection to the Spanish-language transcript expenses.

Avanzalia also objects to costs related to the Spanish-language deposition of Jorge Buitrago. It contends that Buitrago speaks English and that any costs associated with taking his deposition in Spanish thus were not reasonable and necessary. But it was Buitrago, not Goldwind, who chose to be deposed in Spanish; Avanzalia's attorney complied with that choice and switched to asking questions in Spanish. Regardless of Buitrago's alleged English-language skills, the deposition ultimately proceeded in Spanish. Goldwind has sufficiently shown that the associated transcript costs were reasonable and necessary.

### 2. Court reporter appearance fees

Goldwind seeks $10,617.50 in court reporter appearance fees. Costs related to court reporter attendance at a deposition are taxable. *Escamilla*, 62 F.4th at 375. Avanzalia objects to these costs in their entirety. It repeats the same objections regarding the necessity of Goldwind's depositions and the necessity of bilingual court reporting that it advanced with respect to Goldwind's claimed costs for the final transcripts. As previously discussed, the Court overrules those arguments. The only remaining issue is whether the maximum rate for court reporter appearance fees set by N.D. Ill. Local Rule 54.1 applies to court reporters transcribing in Spanish.

Under Local Rule 54.1, "[c]ourt reporter appearance fees may be awarded in addition to the per page limit [for transcripts], but the fees shall not exceed the published rates on the Court website unless another rate was previously provided by order of court." The published rates for the Northern District of Illinois are $110 per half day and $220 per full day. Goldwind argues that these limits do not apply to Spanish-language court reporters. It therefore seeks to fully recover the Spanish-language court reporter appearance fees, which ranged from $1200 to $1575 per day.

The published rates do not indicate any basis for differentiating based on language or any other special circumstance. Local Rule 54.1 provides a safety valve by permitting parties to seek court approval of a different rate. However, the Rule specifies that parties must do so *before* seeking costs, not after: "fees shall not exceed the published rates on the Court website unless another rate was *previously provided by order of court*." Because the parties did not seek a court-ordered rate adjustment for

the Spanish-language reporter, the Court concludes that Goldwind can recover costs for the Spanish-language court reporter appearance fees only up to the maximum amount.

Based on the chart of deposition expenses submitted by Goldwind, the Court finds that a Spanish-language court reporter was present for six full days and that therefore Goldwind is entitled to $1,320 in costs. *See* Def.'s Bill of Costs, Ex. B-3.

### 3. Court reporter overtime

Goldwind seeks $12,312.50 in court reporter overtime costs. It asserts that "[t]he parties agreed that the depositions of certain witnesses would be conducted at times that would incur overtime charges because of the start times of depositions, the length of time the deposition took (because of translation) and/or the fact that the witness was residing in a foreign country in a foreign time zone." Def.'s Bill of Costs at 13. Avanzalia does not dispute that Goldwind is entitled to overtime costs as a general matter, but it contests the necessity of overtime costs for the depositions of three witnesses: Virgil Rose ($112), Arturo Hoyos ($75), and Ivan Furones ($75). Avanzalia contends these depositions took place during standard hours and that Goldwind was responsible for any excess time. Goldwind does not provide a substantive reply to Avanzalia's assertions. Therefore, the Court sustains Avanzalia's objections to the $262 in overtime costs for these three witnesses and awards Goldwind $12,050.50 in overtime costs.

### 4. Rough transcripts

Goldwind seeks to recover $6,156.17 for rough drafts of deposition transcripts. Avanzalia does not dispute that $4,822.15 of these claimed expenses were reasonable and necessary due to the parties' compressed deposition schedule. But Avanzalia

objects to $1,222.27 of the rough draft costs in instances where it argues that the deposition schedule was not fast-paced enough to require Goldwind to order a rough draft. Avanzalia also argues that it should not be responsible for $111.75 for rough transcripts that it says were "unrelated" to the litigation.

Regarding the first objection, Goldwind fails to adequately respond to Avanzalia's argument. Avanzalia specifically objected to the rough drafts obtained for David Halligan, Enrique Lorente, and Andres Alva. Goldwind's reply explains only its need "to quickly review Mr. Lorente's assertions"—made in his capacity as Avanzalia's corporate representative—to prepare for several depositions scheduled soon after. Def.'s Reply at 19. The Court finds on this basis that it was reasonable and necessary for Goldwind to obtain a rough transcript of Lorente's deposition. But because Goldwind's reply is silent as to Halligan and Alva, it has not justified the $254.37 and $232.90 fees for the rough transcripts of those depositions, respectively.

Regarding the second objection, Avanzalia noticed the three depositions at issue. The Court therefore rejects its unexplained assertion that these depositions were "unrelated" to the litigation. Avanzalia does not object on any other grounds to Goldwind's stated need for rough drafts of these transcripts. Goldwind therefore is entitled to recover the disputed $111.75. In sum, the Court taxes Avanzalia with $5,668.90 in rough transcript costs.

### 5. Videorecorded depositions

Goldwind seeks $34,570 for video recordings of depositions. The Seventh Circuit has held that the "costs for video-recorded depositions" are taxable under section 1920(2). *Little*, 514 F.3d at 701. "A prevailing party can recover costs for both a

video-recording and a transcript of the same deposition, provided that the party can show both are necessary and reasonable in the context of the case." *Trading Techs. Intern., Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 976 (N.D. Ill. 2010) (citing *Little*, 514 F.3d at 702); *Oleksy v. Gen. Elec. Co.*, No. 06 C 1245, 2016 WL 7217725, at *6 (N.D. Ill. Dec. 12, 2016). Avanzalia argues that Goldwind has failed to show that its video costs were reasonable and necessary.

Goldwind asserts, and Avanzalia does not dispute, that "none of the witnesses whose videotaped depositions were taken by Goldwind were within the subpoena power of the court." Def.'s Bill of Costs at 11. Because witnesses outside of the Court's subpoena power cannot be compelled to testify at trial, "it was accordingly reasonable to request both printed transcripts and video recordings of their depositions." *Cascades Comput. Innovation, LLC v. Samsung Elecs. Co.*, No. 11 C 4574, 2016 WL 612792, at *4 (N.D. Ill. Feb. 16, 2016) (Kennelly, J.). In addition, discovery took place during the COVID-19 pandemic when many proceedings, including the depositions in this case, could not be conducted in person. Goldwind's decision to obtain video recordings of some depositions was reasonable given the risks that illness or travel restrictions might have made witnesses unavailable for trial. *See, e.g.*, *Yates v. City of Chicago*, No. 18 C 2613, 2021 WL 6063862, at *2 (N.D. Ill. Dec. 22, 2021) ("[B]ecause these depositions were conducted in the midst of the pandemic, there is no telling whether these[ ] witness[es] would be available at trial.").

Avanzalia argues that the fact that the witnesses were employees of Avanzalia or Goldwind mitigated the risk that witnesses would be unavailable for trial. Although that arguably lowered the probability that they would decline to appear in court, it does

nothing to minimize the risk of pandemic-related complications or other events that might render a witness unavailable.

Goldwind also obtained video copies of three depositions in which Avanzalia initiated the videorecording. Under these circumstances, it was reasonable and necessary for Goldwind to obtain the same recordings as its opponent. *See Oleksy*, 2016 WL 7217725, at *7 (finding that the prevailing party's cost for obtaining video "was not unreasonable" because the opposing party initiated the deposition and video recording); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 856 (N.D. Ill. 2015) ("It would be unfair to allow Plaintiffs access to video recordings of transcripts for possible use at trial and to deny [the defendant] the right to obtain those same video tapes (and, of course, to tax the Plaintiffs for them upon prevailing)."). The Court concludes that the $34,570 that Goldwind paid to obtain video recordings of depositions was reasonable and necessary and taxes these costs to Avanzalia.

### 6. Realtime feeds

Goldwind seeks $17,850.62 in fees for Realtime transcript feeds in English and Spanish during various depositions. Avanzalia does not dispute that Realtime feeds are taxable as "transcripts" under section 1920(2).[2] Goldwind asserts that the Realtime feeds were reasonable and necessary because they were "demanded by Plaintiffs and/or were necessitated by the fact that the depositions were taken in Spanish and there were frequent lengthy interpretation services which resulted in repeated objections

---

[2] Avanzalia also does not object to the Realtime costs (or any other transcript costs, aside from the court reporter appearance fees) as exceeding the limitations set by N.D. Ill. Local Rule 54.1. The Court therefore does not consider that argument.

by Plaintiffs' counsel during the depositions concerning translation." Def.'s Bill of Costs at 32. Avanzalia argues that the Realtime services were not reasonable or necessary, particularly because Goldwind's counsel conducting the depositions did not speak Spanish.

Avanzalia does not dispute that it insisted upon Realtime services at depositions. To the extent that Avanzalia now argues that the services it required were not reasonable or necessary, the Court overrules that proposition. The Court agrees, however, that Goldwind has not sufficiently explained why it needed Realtime feeds in English or Spanish at depositions for which Avanzalia did *not* insist upon these services. Goldwind's assertion that a Spanish-speaking attorney from its team sat in on "a" deposition is insufficient to show that Realtime services were reasonably necessary in every instance. Def.'s Reply at 9. The Court concludes that Goldwind should not recover costs for Realtime services that were not demanded by Avanzalia. Neither party, however, specifies *which* Realtime feeds were provided at Avanzalia's insistence. Goldwind's counsel asserts in an affidavit supporting the bill of costs that Avanzalia "requested Realtime feeds for most of the depositions taken in this matter" but does not provide further detail. Def.'s Bill of Costs, Ex. B ¶ 6. Because Avanzalia has not disputed that it demanded Realtime feeds at "most" depositions, the Court awards Goldwind $8,925.31, which represents 50% of its requested costs for Realtime feeds.

    7.    **Remote deposition services**

Goldwind seeks to recover $14,070 in "costs associated with the display of exhibits and other costs in connection with the technology for conducting a remote electronic deposition." Def.'s Bill of Costs at 13. As previously discussed, the Court

14

recognizes that the COVID-19 pandemic required the parties to conduct remote depositions. But Goldwind has provided almost no explanation as to what the various charges in this category represent and why each was reasonably necessary to conducting a remote deposition. The supporting invoices, which list charges for vague line items such as "Advanced Technology Services/Connectivity," "Exhibits," and "Veritext Virtual Services," fall short of explaining what services were provided and why these services were important to carrying out the remote depositions. Because Goldwind has not carried its burden, the Court declines to award Goldwind the requested $14,070 in costs.

**C.     Costs claimed under section 1920(4)**

Goldwind seeks $20,180.72 under section 1920(4), which permits courts to award costs for "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." Specifically, Goldwind seeks to recover (1) $3,761 in electronic copying fees associated with e-discovery, (2) $144.25 in photocopying expenses, and (3) $16,274.55 in document translation expenses.

**1.     Electronic copies**

Goldwind requests $3,761.92 in "costs associated with electronic copying in connection with [its] productions of documents to Plaintiffs." Def.'s Bill of Costs at 14. The law is unsettled as to which electronic processes are the equivalent of "making copies" under section 1920(4). *See Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, No. 17 C 1973, 2021 WL 3489813, at *12 (N.D. Ill. Aug. 6, 2021) ("The Seventh Circuit has not comprehensively addressed the extent to which e-discovery costs may be taxed

15

against a non-prevailing party under 28 U.S.C. § 1920(4)."). Although the Seventh Circuit has said that "costs for converting data into a readable format in response to [a] discovery request" are taxable under section 1920(4), it "has not subsequently determined whether § 1920(4) allows for recovery of other services involved in processing [electronically stored information]." *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 52 F. Supp. 3d 893, 901 (N.D. Ill. 2014) (quoting *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009), *abrogated in part on other grounds by Hughes v. Nw. Univ.*, 142 S. Ct. 737 (2022)). But Goldwind characterizes its requested costs as associated only with "electronic copying," and Avanzalia does not dispute that characterization or object to the amount requested by Goldwind. Therefore, the Court taxes Avanzalia in the amount of $3,761.92.

**2.     Photocopies**

Avanzalia argues that Goldwind has not carried its burden of showing the $144.25 in photocopying costs were reasonable and necessary. The Court concludes that Goldwind has sufficiently explained that the requested photocopying costs were for (1) Avanzalia's requested copy of Goldwind's expert report on Panamanian law, (2) copies of documents submitted to the State Department, and (3) copies of documents submitted to the Court in connection with Goldwind's motion for summary judgment. The Court finds that these relatively minor copying expenditures were reasonable and necessary. *See Motorola Sols., Inc.*, 2021 WL 3489813, at *11 ("A prevailing party may recover photocopying costs for documents provided to the court or the other parties, but not for those made for its own convenience." (quoting *Merix Pharm. Corp. v. Clinical Supplies Mgmt., Inc.*, 106 F. Supp. 3d 927, 944 (N.D. Ill. 2015))).

3. **Document translation**

Goldwind asserts that it is entitled to recover $16,274.55 in document translation fees. The Supreme Court has held that document translation is not taxable under section 1920(6)—which authorizes "compensation of interpreters"—because the "ordinary meaning of the word 'interpreter' is a person who translates orally from one language to another" rather than a person who translates the written word. *Taniguchi*, 566 U.S. at 562. Goldwind nevertheless contends that document translation expenses are authorized under section 1920(4) if *copies* of the translated documents were necessary to the litigation. This roundabout interpretation is incompatible with the text of the statute and the Supreme Court's warning against "stretch[ing] the ordinary meaning of the cost items Congress authorized in § 1920." *Id.* at 573. Goldwind cites to two district court decisions authorizing translation costs under section 1920(4), but both decisions rely on a Fifth Circuit case from 1983, decades before the Supreme Court decided *Taniguchi*. *See BookIt OY v. Bank of Am. Corp.*, No. 17 C 02577, 2019 WL 13156690, at *1 (N.D. Tex. Sept. 3, 2019) (citing *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 133 (5th Cir. 1983)); *DSS Tech. Mgmt. Inc. v. Taiwan Semiconductor Mfg. Co., Ltd.*, No. 14 C 0199, 2016 WL 5942316, at *6 (E.D. Tex. Oct. 13, 2016) (same). That authority thus does little to bolster Goldwind's argument. Because document translation costs are not authorized by section 1920(4) or 1920(6), the Court denies Goldwind's request for these expenses.

D.      Costs claimed under section 1920(6)

Goldwind seeks $19,744.75 under section 1920(6), which permits courts to award costs for "compensation of interpreters." Goldwind asserts that it is entitled to recover the fees it paid for English-Spanish and Spanish-English oral interpretation at various depositions. As discussed, oral interpretation is a taxable cost under section 1920(6). *See Taniguchi*, 566 U.S. at 562. But Avanzalia argues that Goldwind cannot recover any of its oral interpretation expenses because the invoices Goldwind submitted from each deposition list a charge for "Translation & Interpretation." Because document translation is not a taxable cost, Avanzalia argues that Goldwind cannot recover any of its interpretation expenses. Pl.'s Resp. at 12.

Although the invoices are poorly labeled, Goldwind's counsel has attested that the entirety of the amount charged was for oral interpretation at depositions. This is supported by the fact that each invoice is marked as associated with the "Proceeding Type: Depositions" and is itemized by the name of the witness deposed. *See, e.g.*, Def.'s Bill of Costs at 73 (Ex. B-3). Apart from the "Translation & Interpretation" label, Avanzalia has not pointed to any evidence that the court reporter service that issued the invoices performed document translation services that were rolled into the charge included on the deposition invoices. In sum, the Court concludes that Goldwind has provided sufficient evidence that it spent $19,744.75 on oral interpretation, not document translation. Avanzalia otherwise does not dispute that these interpretation fees were reasonable and necessary. The Court therefore taxes these costs to Avanzalia.

E. **Summary of awarded costs**

To summarize, the Court taxes the following costs to Avanzalia:

$162.50 for private service of process

$359.50 for the Clerk of Court fee

$9,964.50 for final English-language transcripts of depositions Avanzalia noticed

$10,806.50 for final English-language transcripts of depositions Goldwind noticed

$11,601.70 for final Spanish-language transcripts

$2,592.50 for English-language court reporter appearance fees

$1,320 for Spanish-language court reporter appearance fees

$12,050.50 for court reporter overtime fees

$5,668.90 for rough transcripts

$34,570 for video recordings

$8,925.31 for Realtime feeds

$3,761.92 for electronic copying

$144.25 for photocopies

$19,744.75 for oral interpretation.

This totals $121,672.83 in costs.

F. **Stay**

Avanzalia has moved for a stay of the enforcement of any award of costs pending its appeal of the Court's order granting summary judgment to Goldwind. Goldwind opposes the motion. "A district court is under no obligation to stay a bill of costs pending appeal." *Hovde v. ISLA Dev. LLC*, No. 18 C 7323, 2021 WL 7161195, at *1 (N.D. Ill. Dec. 8, 2021). Apart from the fact that the Court's judgment may be

19

reversed—which is a possibility almost any time a party appeals—Avanzalia provides no explanation for why a stay might be warranted. The Court denies the motion.

## Conclusion

For the foregoing reasons, the Court approves Goldwind's bill of costs [dkt. 183] in part and awards Goldwind $121,672.83 in costs. The Court denies Avanzalia's motion for a stay [dkt. 188].

```
                                    _____
                                           MATTHEW F. KENNELLY
                                          United States District Judge
```

Date: September 7, 2023