IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AVANZALIA SOLAR, S.L. and<br>AVANZALIA PANAMA, S.A.,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>GOLDWIND USA, INC., d/b/a<br>GOLDWIND AMERICAS,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)　Case No. 20 C 5035<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

　　Avanzalia Solar, S.L. and Avanzalia Panama, S.A. have sued Goldwind USA, Inc. for tortious interference with prospective economic advantage and tortious interference with contract. Goldwind moved for summary judgment on both claims, and the Court granted the motion. Avanzalia appealed. The Seventh Circuit affirmed the Court's decision on the prospective economic advantage claim. On the interference with contract claim, the Seventh Circuit affirmed the Court's ruling dismissing the claim to the extent it was asserted under a particular theory. But the court noted that Avanzalia had also asserted the claim under a second theory, specifically, the theory articulated in Restatement (Second) of Torts § 766A. Because this Court had not addressed that alternative theory, the court of appeals remanded the case for further consideration. *Avanzalia Solar, S.L. v. Goldwind USA, Inc.*, 146 F.4th 553 (7th Cir. 2025). For the reasons below, the Court denies Goldwind's motion for summary judgment on the tortious interference with contract claim.

**Background**

The following facts are undisputed unless otherwise noted and are presented in the light most favorable to Avanzalia, the party opposing summary judgment. The facts are recounted in greater detail in the Seventh Circuit's recent decision and the Court's earlier summary judgment opinion. *See id.* at 558–60; *Avanzalia Solar, S.L. v. Goldwind USA, Inc.*, No. 20 C 5035, 2023 WL 319135, at *1–5 (N.D. Ill. Jan. 19, 2023).

Avanzalia Panama is a Panamanian corporation that owns a solar power plant in Panama. Avanzalia Solar, a Spanish energy company, owns Avanzalia Panama and invested in its solar power plant. Goldwind is a Delaware corporation with its headquarters and principal place of business in Chicago. Goldwind concedes for the purposes of this motion that it operated as the alter-ego of Unión Eólica Panameña Penonomé I (UEP I), a Panamanian company and the owner of an electrical substation called El Coco.

Empresa de Transmision Electrica, S.A. (ETESA) is a government-run transmission company that maintains and manages the Panamanian national grid. ETESA must issue a certificate of viability before an entity may connect to the national grid. Before issuing a certificate, ETESA must notify the relevant substation owner of the request for access and seek the owner's comments on electrical studies submitted by the applicant.

Autoridad Nacional de los Servicios Publicos (ASEP) is the governmental agency that regulates electricity and other public services in Panama. ASEP issues definitive licenses to entities that wish to build, operate, and generate electricity from

2

power plants.

In 2013, Avanzalia entered the Panamanian energy market to build solar farms. It sought a connection to the El Coco substation, through which the energy produced on its solar farms could reach consumers. Avanzalia obtained the necessary certificate of viability from ETESA and definitive license from ASEP by the end of 2014. In August 2015, Avanzalia sought access to the El Coco substation, but UEP I denied access, citing regulatory violations. Avanzalia filed a complaint with ASEP. UEP I prevailed before ASEP. After efforts to remedy the violations, Avanzalia and UEP I executed an agreement in December 2017 allowing Avanzalia to access the El Coco substation. Avanzalia alleges that UEP I then engaged in further misconduct by delaying the issuance of construction contracts and stalling construction.

Avanzalia expected to have its plant operational in 2017 and executed power purchase agreements with five entities: Tova S.A., Nuevos Hoteles de Panama, Tamek, S.A., Invesiones Parna, S.A., and Kadima, S.A. The agreement with Tova was executed on December 21, 2016, and the other agreements were executed in 2017 and 2018. During a December 22, 2016, meeting, UEP I's manager was advised that Avanzalia had "commitments with its existing clients [to provide electricity] and had other prospective clients[.]" Def.'s L.R. 56.1 Stmt. ¶ 60 (quoting Exh. 2, Hernandez Decl. ¶ 3). Avanzalia alleges that UEP I knew or constructively knew of the 2017 and 2018 agreements because its attorney helped Avanzalia source customers until sometime in 2016. Avanzalia alleges that Goldwind tortiously interfered with these power purchase agreements by making it impossible for Avanzalia to supply energy by the required dates.

3

In June 2019, ETESA issued a second certificate of viability to Avanzalia. This document granted Avanzalia the right to access the national grid and established the financial terms of its access. Avanzalia claims that the purpose of this agreement has been thwarted by Goldwind's misconduct, because without the ability to connect to the El Coco substation, Avanzalia could not access the national grid and perform under its agreement with ETESA.

In May 2020, after UEP I sold the El Coco substation, Avanzalia finally connected to the substation. It began selling electricity from its plant in January 2021.

Avanzalia sued Goldwind for tortious interference with prospective economic advantage and with contract. Goldwind moved for summary judgment on both counts, arguing that Avanzalia was required to exhaust administrative remedies before ASEP and challenging the sufficiency of the evidence. Goldwind also argued that Avanzalia was collaterally estopped from claiming wrongdoing based on conduct prior to the 2017 access agreement because ASEP had ruled in its favor.

The Court granted summary judgment to Goldwind on both claims, holding that ASEP's findings were binding and that collateral estoppel precluded a finding of wrongdoing based on Goldwind's conduct before the 2017 access agreement. The Court also concluded that Avanzalia failed to show that Goldwind's actions after the 2017 agreement were directed at a third-party, as typically required for tortious interference under Illinois law.

On appeal, the Seventh Circuit affirmed the Court's decision to afford comity to ASEP's decision and apply collateral estoppel. *Avanzalia Solar*, 146 F.4th at 561, 565. It also affirmed the Court's rejection of Avanzalia's tortious interference with

4

contract claim under Restatement (Second) of Torts § 766 because Avanzalia failed to show action by Goldwind directed towards third parties. *Id.* at 567. The court of appeals held that the Court erred, however, in failing to consider a second theory of tortious interference with contract. *Id.* at 565–66. "Under Restatement § 766, a plaintiff can prove the defendant induced a third party not to perform the contract." *Id.* at 565. But "the scope of the cause of action [for tortious interference with contractual relations in Illinois] is broader [than section 766] and encompasses the situation in which the defendant prevents the plaintiff from performing the contract and, as a result, he is unable to require the third party to perform." *Scholwin v. Johnson*, 147 Ill. App. 3d 598, 608, 498 N.E.2d 249, 255 (1986). *Scholwin* cited Restatement (Second) of Torts § 766A, which states:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.

Restatement (Second) of Torts § 766A (1979); *see Scholwin*, 147 Ill. App. 3d at 608, 498 N.E.2d at 255. The Seventh Circuit noted that, like Illinois courts, it too had recognized this as a viable theory of tortious interference. *Avanzalia*, 146 F.4th at 566 (citing *Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1344–45 (7th Cir. 1992)).

      The Seventh Circuit directed the Court, on remand, to apply the section 766A theory of tortious interference with contract to "(1) Avanzalia's obligations under its June 2019 access contract with ETESA, if its certificate from ETESA is best understood as a contract rather than a license; and (2) Avanzalia's obligations

5

pursuant to its postaccess agreement private client purchase agreements." *Id.*[1] Following remand, the parties advised the Court that it could rely on their original summary judgment briefs; they did not ask to supplement those briefs.

## Discussion

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when, after drawing all reasonable inferences from the record in favor of the nonmoving party, a reasonable trier of fact could return a verdict for the nonmovant. *Id.*

The party seeking summary judgment bears the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the "party that bears the ultimate burden at trial must show that there is evidence creating a genuine issue of material fact." *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If the party with the burden of proof cannot show that each essential element of its claim or defense is factually supported, summary judgment against that party is appropriate. *Celotex*, 477 U.S. at 323–24.

---

[1] The Seventh Circuit further explained that "Section 766A does not apply to the following two items: Avanzalia's definitive license from ASEP (which Avanzalia has not shown to be a contract) and Avanzalia's expected sales on the open spot market (which were expectancies rather than contracts)." *Id.* at 566. Illinois courts have not adopted Restatement (Second) of Torts § 766B, which applies the theory of section 766A to expectancies, and this precludes the Court's consideration of the latter issue. *Id.* at 566–67.

A.	June 2019 access agreement with ETESA

The Court begins with the June 2019 access agreement with ETESA. The threshold question is whether the agreement is a license or a contract. A section 766A claim, like a section 766 tortious interference claim, requires "the existence of a valid and enforceable contract between the plaintiff and another party[.]" *Williams v. Shell Oil Co.*, 18 F.3d 396, 402 (7th Cir. 1994); *see Scholwin*, 147 Ill. App. 3d at 607–08, 498 N.E.2d at 255–26.

In Illinois, "[t]he question of the existence of a contract is a matter of law for determination by the court." *Bus. Sys. Eng'g, Inc. v. Int'l Bus. Machines Corp.*, 547 F.3d 882, 886–87 (7th Cir. 2008) (quoting *Arneson v. Bd. of Trs., McKendree Coll.*, 210 Ill. App. 3d 844, 850, 569 N.E.2d 252, 256 (1991)). A contract is a bargained-for exchange, or "an agreement between competent parties, upon a consideration sufficient in law, to do or not to do a particular thing." *Steinberg v. Chi. Med. Sch.*, 69 Ill. 2d 320, 329, 371 N.E.2d 634, 639 (1977) (quoting *People v. Dummer*, 274 Ill. 637, 640, 113 N.E. 934, 935 (1916)). The "basic ingredients" of a contract are offer, acceptance, and consideration, "[a]ny act or promise which is of benefit to one party or disadvantage to the other[.]" *Id.* at 329–30, 371 N.E.2d at 639. Though a party breaches a contract by failing to perform, a license "confers no right or estate or vested interest, but is at all times revocable at the pleasure of the party that grants it." *City of Carbondale v. Wade*, 106 Ill. App. 654, 659 (1903) (quoting *State v. Holmes*, 38 N.H. 225, 227 (1859)). A license, unlike a contract, does not stem from bargained-for agreement to "exchange promises or to exchange a promise for a performance or

to exchange performances.'" Restatement (Second) of Contracts § 3, 17 (1981).

The June 2019 agreement between ETESA and Avanzalia grants Avanzalia access to the national grid in exchange for payment for its use of the transmission system, connection, and other services rendered. Under section 10.3 of the agreement, ETESA must permit access to the grid and will breach the contract if it denies access without a justified technical reason. The agreement does not permit unilateral revocation of access to the grid by ETESA. Rather, it provides for termination by mutual agreement or waiver by Avanzalia. The agreement—which involves an exchange of promises and defines breach by each party—is therefore a contract as opposed to a revocable license.

The Court derives the elements of a tortious interference claim under section 766A from the elements for a section 766 claim, as modified by *Scholwin* for section 766A. The plaintiff must establish: (1) it had a valid and enforceable contract with another party; 2) the defendant was aware of the contractual relationship; 3) the defendant intentionally and unjustifiably prevented the plaintiff from performing the contract; and 4) the plaintiff was damaged as a result. *See Scholwin*, 147 Ill. App. 3d at 607–09, 498 N.E.2d at 255–26. *See also Havoco*, 971 F.2d at 1344; Restatement (Second) of Torts § 766A (1979). Goldwind does not contest Avanzalia's evidence of damages.

As the movant for summary judgment, Goldwind bears the initial burden of establishing that there is no genuine factual dispute on one or more contested elements such that no reasonable jury could find in Avanzalia's favor on its claim. The record in this case precludes entry of summary judgment in Goldwind's favor.

First, as the Court has concluded, the 2019 ETESA agreement is a contract as opposed to a license (this likely is a legal question resting on undisputed facts). Second, the parties agree that Goldwind was aware of the contractual relationship between Avanzalia and ETESA, because Avanzalia could not access the Panamanian grid without an agreement with ETESA. Goldwind argues that the third element is not met, contending that delay or hindrance in the execution of a contract does not constitute a breach for purposes of a tortious interference claim. *See George A. Fuller Co., a Div. of Northrop Corp. v. Chi. Coll. of Osteopathic Med.*, 719 F.2d 1326, 1330 & n.1 (7th Cir. 1983) ("Absent persuasive indicia that the Illinois Supreme Court would extend the action for international interference with contract to cover instances of mere hindrance or increased burden, we will not do so."). The Court assumes without deciding that hindrance or delay does not suffice, as Avanzalia did not respond to this argument in its brief and in fact adopted this argument in its opening brief before the Seventh Circuit. But a reasonable jury could find that Avanzalia's performance under the ETESA contract was prevented—rendered impossible—when Goldwind prevented Avanzalia from accessing the El Coco substation, which was required for Avanzalia to connect to the national grid and benefit from its contract with ETESA.

This leaves only the issue of intentional and unjustifiable interference by Goldwind. But Goldwind has forfeited this argument for the purposes of the summary judgment motion. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) ("In our adversarial system of adjudication, . . . 'we rely on the parties to frame the issues.'") (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)). The parties'

9

original summary judgment briefs, which both sides declined to supplement on remand, largely concerned issues since resolved by the Seventh Circuit, including preclusion by the ASEP adjudication and whether Goldwind directed tortious conduct towards third parties. In neither its memorandum of law in support of summary judgment nor its reply brief did Goldwind address the element of an intentional and unjustified interference regarding the 2019 ETESA agreement, much less establish that there is no genuine factual dispute on this element. For these reasons, Goldwind is not entitled to summary judgment on Avanzalia's tortious interference claim regarding the ETESA agreement.

**B.     Private client purchase agreements**

The Court next evaluates Avanzalia's claim for tortious interference with its five private client purchase agreements under a section 766A theory. The claim requires proof of the same elements just discussed. Goldwind contests the sufficiency of Avanzalia's evidence on all elements but damages.

Again, however, Goldwind is not entitled to summary judgment. First, the existence of the agreements is undisputed. And there is a genuine factual dispute regarding Goldwind's knowledge of each of the agreements. Avanzalia referenced its commitments to both its clients and prospective clients in a December 2016 meeting with UEP I, Goldwind's alter-ego, just one day after Avanzalia and Tova finalized their agreement. "This evidence supports a finding that [Goldwind] knew of the existence of the contract or that [Goldwind] knew of facts from which a contract could reasonably have been inferred, which is all that is necessary under Illinois law." *Wheel Masters, Inc. v. Jiffy Metal Prods. Co.*, 955 F.2d 1126, 1130 (7th Cir. 1992). Though four of the

five agreements were finalized after this meeting, taking the facts in the light most favorable to Avanzalia, Goldwind knew of facts from which the later contracts could be inferred. Goldwind is familiar with the electricity industry and must have understood that the purpose of Avanzalia's solar farm was to sell energy and that doing so requires contracts—even if one disregards Avanzalia's comment at the December 2016 meeting, which expressly communicated its intent to sell electricity to clients (in the plural, and thus not only Tova). Finally, a reasonable jury could also find that Goldwind prevented Avanzalia's performance of its contracts, as it had not connected to the El Coco substation by the dates it was required to provide its clients with energy. And the existence of damages is not seriously contested here.

      This leaves the element of intentional and unjustifiable inducement. Goldwind has—as with the ETESA agreement—forfeited (for present purposes) any contention that evidence that would permit a jury to find this element is lacking. Nowhere did Goldwind's memorandum in support of summary judgment or its reply address this point, and the Court cannot construct the argument for Goldwind, which would deprive Avanzalia of an opportunity to respond.

## Conclusion

      For the foregoing reasons, the Court denies Goldwind's motion for summary judgment [dkt. 126] with respect to Avanzalia's remaining tortious interference with contract claim. The Court sets the case for a telephonic status hearing on October 24, 2025 at 8:50 a.m. to discuss the length of trial and set a prompt trial date.

Date: October 21, 2025                                  _____
                                                              MATTHEW F. KENNELLY
                                                              United States District Judge