**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **AVANZALIA SOLAR, S.L. and AVANZALIA PANAMA, S.A.,** | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **Case No. 20 C 5035** |
| **GOLDWIND USA, INC., d/b/a GOLDWIND AMERICAS,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Avanzalia Solar, S.L. and Avanzalia Panama, S.A. sued Goldwind USA, Inc. for tortious interference with prospective economic advantage and tortious interference with contract. The Court granted summary judgment to Goldwind on both claims. Avanzalia appealed. The Seventh Circuit affirmed on the prospective economic advantage claim and remanded the case for further consideration of an alternate theory regarding the interference with contract claim. *See Avanzalia Solar, S.L. v. Goldwind USA, Inc.*, 146 F.4th 553 (7th Cir. 2025). On remand, the Court denied Goldwind's motion for summary judgment on the tortious interference with contract claim. In April 2026, after an eight-day trial, a jury returned a verdict for Goldwind on that claim.

Goldwind has filed a bill of costs and a motion for attorney's fees under 28 U.S.C. § 1927. For the reasons below, the Court reduces the requested costs by $181,612.44, taxes costs against Avanzalia in the amount of $74,581.84, and denies the motion for attorney's fees.

**Background**

Avanzalia Panama is a Panamanian corporation that owns a solar power plant in Panama. Avanzalia Solar, a Spanish energy company, owns Avanzalia Panama and invested in its solar power plant. Goldwind is a Delaware corporation with its headquarters and principal place of business in Chicago. Goldwind manufactures wind turbines. Goldwind and Unión Eólica Panameña (UEP) developed the 336.8 MW Penonomé Wind Project, a Panamanian wind farm employing Goldwind's turbines that included the El Coco Substation, a facility connecting the electricity produced by the wind farm to the national grid.

In 2013, Avanzalia entered the Panamanian energy market to build solar farms. It sought a connection to the El Coco Substation, through which the energy produced on its solar farms could reach consumers. UEP I, Goldwind's Panamanian alter ego, denied Avanzalia access to the substation. After years of disputes between the parties, Avanzalia finally connected to the El Coco substation in May 2020.

Avanzalia brought this lawsuit alleging tortious interference with prospective economic advantage and tortious interference with contract. The contract claim concerned power purchase agreements (PPAs) that Avanzalia had with five entities: Tova S.A., Nuevos Hoteles de Panama, Tamek, S.A., Invesiones Parna, S.A., and Kadima, S.A. The contract claim also rested on Avanzalia's contract with Empresa de Transmision Electrica, S.A. (ETESA), a government-run transmission company that manages the Panamanian national grid, with which Avanzalia had an agreement establishing the financial terms of its access to the grid.

This case has a fairly extensive history described in opinions of this Court and

the Seventh Circuit. The Court first granted summary judgment to Goldwind on both of Avanzalia's claims for tortious interference with contract and tortious interference with expectancy. *See Avanzalia Solar, S.L. v. Goldwind USA, Inc.*, No. 20 C 5035, 2023 WL 319135, at *1 (N.D. Ill. Jan. 19, 2023). The Seventh Circuit affirmed on the tortious interference with expectancy claim but remanded for consideration of a second theory of tortious interference with contract under Restatement (Second) of Torts § 766A with respect to the June 2019 Avanzalia-ETESA contract and the five PPAs. *See Avanzalia Solar*, 146 F.4th at 565–66.

On remand, the Court denied Goldwind's motion for summary judgment on the tortious interference with contract claim. *Avanzalia Solar, S.L. v. Goldwind USA, Inc.*, No. 20 C 5035, 2025 WL 2972720, at *4–5 (N.D. Ill. Oct. 21, 2025).

Shortly thereafter, Goldwind filed a motion to exclude the testimony of Gary Kleinrichert, Avanzalia's damages expert, and Avanzalia filed a motion to supplement its damages expert report, which had been submitted in 2022. After a hearing, the Court granted Avanzalia's motion for leave to supplement and denied Goldwind's motion. The Court concluded that a supplement was warranted based on new data on cash flows from the operation of Avanzalia's plant and to ensure consistency with the Court's bar on considering conduct prior to a 2017 access agreement between the parties.

In a motion in limine, Goldwind sought to bar Avanzalia's damages theory. It argued that Avanzalia had no damages model for interference with any of the five PPAs and that it had inappropriately modeled damages for tortious interference with expectancy rather than tortious interference with contract. Avanzalia responded that Kleinrichert's model was based on indirect or consequential damages, as permitted by

Illinois contract law. The Court denied Goldwind's motion in limine.

The case proceeded to trial in April 2026, and a jury returned a verdict for Goldwind. Goldwind made similar arguments about the inadequacy of Avanzalia's damages evidence and theory in both a motion under Federal Rule of Civil Procedure 50(a) and in objection to the proposed jury instructions. The Court took Goldwind's Rule 50(a) motion under advisement prior to jury deliberations and overruled its argument with respect to the jury instructions. The verdict in favor of Goldwind rendered its Rule 50(a) motion moot.

## Discussion

Goldwind requests costs of $256,194.28 under Federal Rule of Civil Procedure 54 and attorney's fees of $2,150,000 under 28 U.S.C. § 1927.

### A. Bill of costs

"Unless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "There is a presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Lange v. City of Oconto*, 28 F.4th 825, 845 (7th Cir. 2022) (quoting *Richardson v. Chi. Transit Auth.*, 926 F.3d 881, 893 (7th Cir. 2019)).

The Court must assess "two questions when reviewing an award of costs: '(1) whether the cost imposed on the losing party is recoverable and (2) if so, whether the amount assessed for that item was reasonable.'" *Lane v. Person*, 40 F.4th 813, 815 (7th Cir. 2022) (quoting *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000)). To be recoverable, an expense must fall into one of the categories of costs specified by

28 U.S.C. § 1920. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441–42 (1987). "Any party seeking an award of costs carries the burden of showing that the requested costs were necessarily incurred and reasonable." *Trs. of Chi. Plastering Inst. Pension Tr. v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009).

Goldwind seeks costs in three categories: fees for transcripts, 28 U.S.C. § 1920(2); fees for exemplification and copies, 28 U.S.C. § 1920(4); and fees for interpreters, 28 U.S.C. § 1920(6).

**1. Transcript costs**

First, Goldwind requests fees in the category of "printed or electronically recorded transcripts necessarily obtained for use in the case" in the amount of $30,475.80. 28 U.S.C. § 1920(2). These transcript costs are of five types: transcripts for five depositions taken after the remand from the Seventh Circuit, the transcript of the pretrial and foreign law hearings, and trial transcripts, as well as video recording and administrative costs and court reporter fees.

**a. Deposition transcripts**

"Recovery of costs for deposition transcripts is authorized if the depositions were 'reasonably necessary'" based on the circumstances at the time of the deposition. *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, No. 15 C 04292, 2021 WL 4552145, at *2 (N.D. Ill. Sept. 16, 2021) (Kennelly, J.) (quoting *Jack-Goods v. State Farm Mut. Auto. Ins. Co.*, No. 01 C 6536, 2004 WL 1672864, at *2 (N.D. Ill. July 23, 2004)). To recover the higher costs for expedited transcripts, the prevailing party must show "that 'it was reasonable and necessary to order transcripts on an expedited basis.'" *Merriweather v. Horizon Therapeutics USA Inc.*, No. 23 C 2714, 2025 WL

1309257, at *3 (N.D. Ill. May 6, 2025) (quoting *Neuros Co. v. KTurbo, Inc.*, No. 08 C 5939, 2011 WL 3841683, at *2 (N.D. Ill. Aug. 25, 2011)).

Goldwind seeks one-day expedited transcript costs for the depositions of Gary Kleinrichert (Avanzalia's damages expert), Alvin Ruiz (a third-party consultant to Avanzalia whose testimony concerned delays in Avanzalia's connection to the grid), Dennis Moreno (Goldwind's expert on Panamanian regulations and free access law), Manuel Abdala (Goldwind's damages expert), and Michael Whalen (Goldwind's expert on delays and market conditions). *See* dkt. 22-2 (December 5, 2025 joint status report), Ex. B (witness list). These depositions all related to Avanzalia's damages, and Avanzalia does not contest that they were necessary to the case.

Goldwind specifically requests $4,495.95, based on a rate of $7.30 per page, the rate set by the Judicial Conference for daily transcripts in fiscal year 2026, the year in which depositions in this case took place. *See* N.D. Ill. General Order 23-0015 (May 19, 2023) (establishing transcript rates for all transcripts requested after October 1, 2023).[1]

Avanzalia argues that Goldwind fails to explain why an expedited transcript was required for each deposition and not merely a matter of convenience. Goldwind responds that expedited transcripts were reasonable and necessary as Avanzalia moved to supplement its damages expert report less than ninety days before the original trial date, requiring a compressed schedule for both depositions and pretrial motions. That schedule included:

- December 8, 2025: Kleinrichert deposition

[1] Although the document on the Northern District of Illinois's website sets rates for fiscal year 2025, the Court cannot find any indication that different rates have yet been set for depositions take in fiscal year 2026.

- December 9, 2025: Abdala deposition
- December 22, 2025: Whalen deposition
- December 31, 2025: deadline for motions in limine and *Daubert* motions
- January 9, 2026: final pretrial order deadline
- February 9, 2026: original trial date, which was postponed on December 16, 2025 to April 13, 2026
- March 3, 2026: Ruiz deposition
- March 4, 2026: Moreno deposition
- April 13, 2026: Jury trial date

Abdala and Moreno's depositions were scheduled for one day after Kleinrichert and Ruiz's respective depositions. The December depositions took place just a few weeks (and in Whalen's case, just one week including the Christmas holiday) before the December motion in limine and *Daubert* deadline. Certain of Goldwind's motions in limine related to the subject of these depositions, namely, Avanzalia's damages. Finally, the March depositions took place not long before the April trial date.

Based on the constrained timeline laid out here, Goldwind has shown that obtaining expedited transcripts for each of the five depositions was reasonable and necessary to prepare for upcoming depositions, filing deadlines, and/or the trial. *See, e.g.*, *Merriweather*, 2025 WL 1309257, at *3 ("In light of the accelerated schedule for conducting the three depositions at issue, and the importance of each physician's testimony in preparing for the depositions of the others, Horizon's request for expedited processing of two transcripts was reasonable and necessary.") (collecting cases); *Springer v. Ethicon, Inc.*, No. 17 C 3930, 2018 WL 1453553, at *15 (N.D. Ill. Mar. 23,

2018) (Kennelly, J.) (holding that expedited transcript was necessary for a deposition taken one week before trial but not for other, earlier depositions); *In re Text Messaging Antitrust Litig.*, No. 08 C 7082, 2014 WL 4343286, at *7 (N.D. Ill. Sept. 2, 2014) (Kennelly, J.) (holding that recovery for expedited deposition transcripts was "necessary because the depositions in question came just before deadlines for experts' reports and defendant's summary judgment motion"); *Whitehouse v. Piazza*, No. 05 C 1638, 2007 WL 9809230, at *3 (N.D. Ill. May 21, 2007) (holding that expedited transcript was reasonable and necessary for deposition that took place about three months before date of jury trial).

As part of its request for transcript costs, Goldwind notes that some of the deposition transcripts included index pages. *See* Bill of Costs at 5, n.2. Courts may award the cost of index pages when reasonable and necessary. *See Escamilla v. United States*, 62 F.4th 367, 376 (7th Cir. 2023). Indeed, "courts in this district have concluded that these costs [for index pages] are recoverable because both indexes and exhibits are essential to understanding the content of a deposition, especially in a complex and heavily litigated case such as this one." *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, No. 08 C 0242, 2011 WL 5008425, at *2 (N.D. Ill. Oct. 20, 2011). Goldwind does not explain why indices were necessary and merely states that the court reporting service required it to obtain indices. Nor does it specify how much the index pages cost. But Avanzalia does not object to the cost for index pages, so the Court grants the request. *See also Avanzalia Solar, S.L. v. Goldwind USA, Inc.*, No. 20 C 5035, 2023 WL 5804232, at *2 & n.1 (N.D. Ill. Sept. 7, 2023) (deducting Goldwind's costs for certain index pages on Avanzalia's objection but awarding the cost of index

pages when Avanzalia did not object).

The Court approves the requested final transcript cost of $4,495.95.

Goldwind also requests costs for the rough transcripts of the depositions of Whalen, Ruiz, and Abdala. It again cites the compressed schedule of motions, pretrial briefing, and trial. Courts have awarded costs for rough transcripts in similar circumstances. *See Yates v. City of Chicago*, No. 18 C 2613, 2021 WL 6063862, at *2 (N.D. Ill. Dec. 22, 2021) (taxing costs for rough transcripts where "the City explains that it needed the rough draft to prepare for two key depositions noticed by plaintiffs for the following week"). But the party seeking costs must explain why the rough transcript was a reasonable and necessary cost. *Springer*, 2018 WL 1453553, at *15 (Kennelly, J.) (taxing costs for expedited transcript for deposition taken a week before trial but not for other, earlier depositions).

Goldwind's motion does not make specific arguments as to why it required rough transcripts for these three depositions. Its declaration states that rough transcripts were requested for the Ruiz deposition because Moreno's deposition took place the next day and for Whalen's deposition, which took just a few business days before the December 31 motion in limine deadline. Blonder Decl. ¶ 4. And Goldwind says that the rough transcript of Abdala's deposition "was necessary to prepare for the next business day deposition of Mr. Whalen." *Id.* But in fact almost two weeks passed between Abdala and Whalen's depositions. It is not clear why Goldwind required not just a one-day expedited transcript but also a rough transcript for Abdala's December 9 deposition, which was not followed by a deposition the next day and took place several weeks before the motions in limine deadline. Accordingly, Goldwind has not shown the

necessity of a rough transcript of Abdala's in addition to the expedited one-day transcript. Of the requested $752.60 for rough transcript costs, the Court subtracts $245.70, the cost of the rough transcript for Abdala's deposition, and approves the resulting amount of $506.90.

**b. Video recordings and administrative costs**

Goldwind next seeks reimbursement for the costs for the video recording of four of the five depositions, those of Moreno, Abdala, Ruiz, and Whalen. The depositions were taken remotely pursuant to an order of the Court, and all of the witnesses were located outside the Court's subpoena power. *See* Fed. R. Civ. P. 45(c). Goldwind says that video recordings were necessary to impeach the witnesses during trial and because the experts could not be compelled to testify at trial.

The Seventh Circuit has held that the "costs for video-recorded depositions" are taxable under section 1920(2). *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 701 (7th Cir. 2008). A prevailing party may recover costs for both a paper transcript and a video recording of a deposition, but only if it was "reasonable and necessary" for counsel to obtain both. *Id.* at 702. Both a video recording and a paper transcript may be necessary when a witness is located beyond the subpoena power of the court and therefore cannot be compelled to provide live trial testimony. *See, e.g.*, *Cascades Comput. Innovation, LLC v. Samsung Elecs. Co.*, No. 11 C 4574, 2016 WL 612792, at *4 (N.D. Ill. Feb. 16, 2016) (Kennelly, J.) (holding that video recording and transcript were reasonable and necessary for witnesses outside the Court's subpoena power but not for other witnesses). Given that Moreno, Abdala, Ruiz, and Whalen were all located outside the Court's subpoena power, obtaining both video recording and transcripts of

their depositions was reasonable. The Court upholds the request for $3,823.50 in costs for video recordings.

Goldwind also seeks reimbursement for the administrative costs of the video depositions that were required by the private court reporting service. These costs were listed on invoices from the court reporting services under the categories of "Exhibits," "Logistics, Processing," "Virtual Services," and "Electronic Files." Blonder Decl. ¶ 3. No charges in this category were incurred from Kleinrichert's deposition, while Ruiz's deposition required $1,073.25 in video deposition costs, creating a significant range. Goldwind has provided no further explanation as to what the various charges in this category represent, why each was reasonably necessary to conduct a remote deposition, and why the costs varied across the depositions. The supporting invoice categories fall short of explaining what services were provided and why these services were reasonably necessary. Because Goldwind has not carried its burden, the Court declines to award Goldwind the requested $1,592.35 in costs.

**c. Hearings transcripts**

Goldwind ordered expedited three-day transcripts for the January 14 pretrial hearing and expedited two-hour transcripts from the foreign law hearing, which took place on January 20 and 21, 2026. "Courts in this District have generally awarded costs for [expedited] transcripts of such proceedings only when the prevailing party articulates some specific necessity[,]" such as a subsequent motion deadline requiring reference to a prior transcript. *Black v. Wrigley*, No. 17 C 101, 2020 WL 4437677, at *27 (N.D. Ill. Aug. 3, 2020) (Kennelly, J.) (quoting *Hillman v. City of Chicago*, No. 04 C 6671, 2017 WL 3521098, at *7 (N.D. Ill. Aug. 16, 2017)).

Goldwind contends that the expedited transcript of the pretrial hearing was necessary to prepare for the following week's foreign law hearing and for trial and that the expedited transcript from the foreign law hearing was required to prepare for the second day of the hearing and begin working on post-hearing memoranda, which were due one week after the hearing. Those justifications are sufficient to show the reasonable need to obtain expedited transcripts.

The transcript of the foreign law hearing cost $1,461.60 at a rate of $8.70 per page, and the transcript of the pretrial hearing cost $759.80 at a rate of $6.55 per page. These rates match those set by the Judicial Conference. *See* N.D. Ill. General Order 23-0015 (May 19, 2023); United States District Court, Northern District of Illinois, "Maximum Transcript Rates," available at https://www.ilnd.uscourts.gov/Pages.aspx?page=transcriptrates (last accessed Aug. 4, 2026) (listing rates for "2-Hour Transcript (Hourly)"). The Court approves the transcript costs for the pretrial hearing and foreign law hearing.

**d. Trial transcripts**

Goldwind seeks to recover trial transcript costs as well. Throughout the trial, Goldwind obtained both expedited hourly transcripts costing $15,016.20 and real-time feeds costing $2,243.80. Avanzalia says that Goldwind had no need for both real-time feeds and expedited transcripts. Goldwind responds that it required real-time feeds to impeach witnesses and prepare to refute testimony with upcoming witnesses.

"Courts consider several factors when determining whether to award costs for daily trial transcripts." *Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, No. 17 CV 01973, 2021 WL 3489813, at *7 (N.D. Ill. Aug. 6, 2021). The relevant factors include:

> (1) the length of the trial and the complexity of the issues, (2) whether a daily transcript was necessary to minimize disagreement over the testimony of witnesses, (3) whether proposed findings of fact were required, (4) whether the case involved expert witnesses whose cross-examination required knowledge of the exact wording of their previous testimony or that of any other witness, (5) the size of the claim, ([6]) and the importance of witness credibility.

*Id.* (quoting *Shanklin Corp. v. Am. Packaging Mach. Inc.*, No. 95 C 1617, 2006 WL 2054382, at *1 (N.D. Ill. July 18, 2006)). The court in *Motorola Solutions* concluded that expedited and final trial transcripts were appropriate because the trial in that case was almost four months long, "involved complex technical issues as well as 5,200 trial exhibits and 30 witnesses[,]" included cross-examination of expert witnesses where credibility was at stake, pertained to a claim of $765 million, and required proposed findings of fact from both parties. *See id.; see also Poulter v. Cottrell, Inc.*, No. 12 C 1071, 2017 WL 2445129, at *6 (N.D. Ill. June 6, 2017) ("[D]aily transcripts are more likely to be considered reasonable in a longer, more complex trial.").

This case also warranted daily transcripts given its complexity. The case involved foreign regulations and law, numerous experts, a damages model, testimony in both Spanish and English, and a claim for $43 million.

Courts in this district are, however, cautious about reimbursing costs for both daily trial transcripts and real-time feeds. *Stollings v. Ryobi Techs., Inc.*, No. 08 C 4006, 2015 WL 4100479, at *7 (N.D. Ill. July 6, 2015) (holding that daily trial transcripts, but not real-time feeds, were reasonably necessary for two-week trial involving two "fairly complicated" claims); *Downing v. Abbott Lab'ys*, No. 15 C 05921, 2023 WL 2472420, at *2–3 (N.D. Ill. Feb. 7, 2023) (holding that both real-time and daily transcripts were not necessary and reducing reimbursement for daily transcript to ordinary thirty-day transcript rate).

Goldwind has not explained why both hourly transcripts and real-time transcripts were necessary. Real-time alone would have been sufficient to permit Goldwind to follow the complex and technical testimony, prepare for upcoming witnesses, and review each trial day. As for motions that Goldwind drafted during trial, "[s]ubstantively, the real time transcripts contained everything that Abbott needed to prepare its Rule 50 motion." *Downing*, 2023 WL 2472420, at *2. The Court will therefore award Goldwind the requested real-time transcript fees of $2,243.80 but reduce the hourly trial transcript fees to $7,594.4 (the rate for thirty-day, ordinary transcripts of $4.40 per page times 1,726 pages). *See* N.D. Ill. General Order 23-0015 (May 19, 2023).

**e. Court reporter appearance fees**

Finally, Goldwind asks for reimbursement for the court reporter fees charged for the depositions of Ruiz and Kleinrichert.

A prevailing party may recover a court reporter's deposition appearance fees. *See* L.R. 54.1(b); *Held v. Held*, 137 F.3d 998, 1002 (7th Cir. 1998). Under this district's local rules, "the [appearance] fees shall not exceed the published rates on the Court website unless another rate was previously provided by order of court." N.D. Ill. L.R. 54.1(b). At the time relevant in this case, the rules provided that "the court reporter attendance fee shall not exceed $110 for one half day (4 hours or less), and $220 for a full day attendance fee." Judicial Conference Policy Regarding the Availability of Transcripts of Court Proceedings, U.S. District Court Northern District of Illinois, at 3; *see Overwell Harvest Ltd. v. Widerhorn*, No. 17 C 6086, 2023 WL 7196054, at *2 (N.D. Ill. Sept. 12, 2023). Goldwind seeks $220 and $110 in reimbursement for the court reporter appearance fees, respectively, at the Ruiz and Kleinrichert

depositions. As these rates are commensurate with the rate prescribed under the local rules, the Court approves these costs.

**2. Copying and exemplification costs**

Next, Goldwind requests reimbursement for exemplification and copying costs totaling $197,318.48. The pertinent statute permits recovery for "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case[.]" 28 U.S.C. § 1920(4).

**a. Exhibit copies**

Goldwind first seeks $6,644.87, the cost of photocopying four sets of exhibits, with each set over 37,000 pages. One copy was for the jury, another for the Court, a third for witnesses, and the last for Goldwind's counsel.

"A prevailing party may recover photocopying costs for documents provided to the court or the other parties, but not for those made for its own convenience." *Motorola Sols., Inc.*, 2021 WL 3489813, at *11 (quoting *Merix Pharm. Corp. v. Clinical Supplies Mgmt., Inc.*, 106 F. Supp. 3d 927, 944 (N.D. Ill. 2015)); *Haroco, Inc. v. Am. Nat. Bank & Tr. Co. of Chicago*, 38 F.3d 1429, 1441 (7th Cir. 1994) (holding that party could not recover for copy of discovery documents and pleadings for its own convenience). "[D]istrict courts have usually limited recovery to three sets of copies, as a prevailing party may not recover copies made for its personal use[.]" *Halo Creative & Design Ltd. v. Comptoir Des Indes Inc.*, No. 14 C 8196, 2018 WL 4742066, at *11 (N.D. Ill. Oct. 2, 2018) (quoting *Menasha Corp. v. News Am. Mktg. Instore, Inc.*, No. 00 C 1895, 2003 WL 21788989, at *4 (N.D. Ill. July 31, 2003)).

Courts occasionally reimburse counsel for copies of exhibits for counsel's own

use, but this typically requires unusual circumstances, as when counsel cannot access documents electronically or where electronic exhibit viewing would distract the jury. *See Motorola Sols., Inc.*, 2021 WL 3489813, at *11. Here, however, Goldwind's copy of exhibits was for counsel's convenience. Goldwind contends that its counsel needed paper copies of the exhibits to reference documents mentioned by opposing counsel. But counsel easily could have pulled up exhibits on a computer, as the Court required the exhibits to be available digitally. The Court therefore reduces Goldwind's request by one-fourth to reimburse it for three copies of exhibits, or $4,983.65.

**b. Demonstrative exhibits**

Goldwind next requests $20,654.99 for the cost of preparing demonstrative exhibits presented to the jury. To determine whether an exemplification was necessarily produced, the Court considers "whether the nature and context of the information being presented genuinely called for the means of illustration that the party employed. In other words, is exemplification vital to the presentation of that information, or was it merely a convenience or, worse, an extravagance?" *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 428–29 (7th Cir. 2000).

Goldwind's exemplification included enlarged versions of portions of the jury instructions and verdict forms, a chart listing the entities involved in the case, two timelines, excerpts from expert testimony, price data related to damages, and a PowerPoint presentation on damages from one of Goldwind's experts. Blonder Decl. ¶ 19. Although Goldwind does not provide a complete breakdown of the exhibit costs, a significant portion appears to come from creative and design work rather than printing costs. *See* Blonder Decl., Ex. A-6 at 33. These expenses are recoverable

"exemplification" costs under *Cefalu*. *Curry v. Revolution Lab'ys, LLC*, No. 17 C 2283, 2024 WL 3251582, at *2 (N.D. Ill. June 30, 2024) (Kennelly, J.) (permitting recovery of fees of consultant preparing graphics for use before jury).

Given the complex nature of the case, the variety of foreign entities named by acronym, and the technical nature of both the damages model and Panama's energy regulation scheme, the Court agrees that the chart of entities, timelines, price data, and PowerPoint presentation on damages were not "extravagance[s,]" *Cefalu*, 211 F.3d at 429, but instead were "necessarily obtained for use in the case[.]" 28 U.S.C. § 1920(4). These demonstratives were "an essential aid to understanding an issue in the case." *Glenayre Elecs., Inc. v. Jackson*, No. 02 C 256, 2003 WL 21947112, at *4 (N.D. Ill. Aug. 11, 2003) (quoting *Rogers v. City of Chi.*, No. 00 C 2227, 2002 WL 423723, at *3 (N.D. Ill. Mar. 15, 2002)).

Still, "demonstrative materials that merely illustrate expert testimony, other evidence or argumentative matters are not taxable." *Se-Kure Controls, Inc. v. Vanguard Prods. Grp., Inc.*, 873 F. Supp. 2d 939, 949 (N.D. Ill. 2012) (quoting *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1999 WL 759472, at *7 (N.D. Ill. Sept. 1, 1999)). The simple blow-ups of various pages of the jury instructions and the summary of Moreno's expert testimony were not essential to the jury's understanding of the case. These demonstratives could have been presented with equal effect and negligible cost through a PowerPoint slide or by simply projecting the instructions or summaries via the courtroom evidence presentation system. *Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*, No. 13 C 321, 2016 WL 316865, at *5 (N.D. Ill. Jan. 26, 2016) (Kennelly, J.) (holding that reproductions of illustrations, claim language, and

patented technology "did little to enhance the Court's understanding of the evidence" and were not appropriately taxed); *Se-Kure Controls*, 873 F. Supp. 2d at 950 (holding that costs for demonstratives that "merely illustrated testimony and other evidence that did not require any enhancement or enlargement to be properly ascertained" were not recoverable). The Court declines to award costs for these demonstratives.

Because Goldwind does not provide a full breakdown of its costs for printing and designing demonstratives, the Court estimates that about five percent of the total cost came from printing the enlarged jury instructions and summary of Moreno's testimony and therefore reduces the requested $20,654.99 in demonstrative exhibit costs by five percent. The Court taxes costs relating to demonstrative exhibits in the reduced amount of $19,622.24.

**c. Document translation**

Goldwind requests $170,018.62 under 28 U.S.C. § 1920(4) for the cost of translating documents in this case. This is not the first time Goldwind has sought reimbursement under section 1920(4) for the costs of translating documents. *See Avanzalia Solar*, 2023 WL 5804232, at *7. Following the Courts' initial grant of summary judgment, the Court denied this request and does so again now.

As an initial matter, regardless of the legal basis for awarding document translation costs under section 1920(4), Goldwind's motion does not explain what documents were translated. Throughout this case, the Court reviewed several translated documents, including various agreements between the parties and Panamanian laws. Yet it is not clear whether Goldwind or Avanzalia paid for the translation of these documents, nor does the Court have any idea how much each

translation cost. Goldwind attaches invoices showing that it paid for translation, but the invoices do not say which documents were translated. *See* Blonder Decl., Ex. A-5. The Court understands that Goldwind planned to show translated documents to the jury and to witnesses. But without an explanation of which documents were translated, the Court cannot assess the issues of reasonableness and necessity.

That aside, there is no legal basis for reimbursing translation costs under section 1920(4). In *Taniguchi v. Kan Pacific Saipan Ltd.*, 566 U.S. 560 (2012), the Supreme Court held that document translation is not taxable under section 1920(6)—which authorizes "compensation of interpreters"—because the "ordinary meaning of the word 'interpreter' is a person who translates orally from one language to another" rather than a person who translates the written word. *Id.* at 562. *Taniguchi* cautioned that "taxable costs under Rule 54(d) . . . are limited to relatively minor, incidental expenses" and "are modest in scope[.]" *Id.* at 573. The Court declined to "stretch the ordinary meaning of the cost items Congress authorized in § 1920" to read section 1920(6) to permit reimbursement for translating documents. *Id.*

The same principle of statutory interpretation applies here. Section 1920(4) does not reference translation or interpretation; instead it concerns "exemplification . . . [and] copies of any materials . . . necessarily obtained for use in the case[.]" 28 U.S.C. § 1920(4). The ordinary meaning of "exemplification" and "copying" does not include translation. Although prior to *Taniguchi* certain courts permitted recovery for document translation under section 1920(4), doing so after *Taniguchi* would contravene its reading of section 1920. *See id.* at 579 & n.2 (Ginsburg, J., dissenting) (collecting local rules from several districts permitting cost reimbursement for document translation under

section 1920(4)).

There is minimal authority after *Taniguchi* holding that translation costs may be recovered under section 1920(4), and those courts draw on authority from prior to *Taniguchi*. *See BookIt OY v. Bank of Am. Corp.*, No. 17 C 02577, 2019 WL 13156690, at *1 (N.D. Tex. Sept. 3, 2019) (citing *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 133 (5th Cir. 1983)); *DSS Tech. Mgmt. Inc. v. Taiwan Semiconductor Mfg. Co., Ltd.*, No. 14 C 0199, 2016 WL 5942316, at *6 (E.D. Tex. Oct. 13, 2016) (same). Although this Court once permitted recovery for document translation costs under section 1920(4), it did so in a patent case. "[C]opies of documents showing prior art are often crucial in patent disputes, and if the original documents are in a foreign language, translating them into English so that the Court may understand them is part and parcel of obtaining necessary copies." *Intercontinental Great Brands*, 2016 WL 316865, at *5. This is, of course, not a patent case. Similar concerns might allow reimbursement for the cost of translating the key contracts at issue in this case, but again, Goldwind has not submitted a list of documents translated or the cost per document

Goldwind requests $27,307.62 for the costs of translated documents shown to the jury. Blonder Decl. ¶ 17. But without discussion of this request in its motion, and without further explanation of which documents were translated for the jury and why that was necessary, Goldwind has waived or forfeited this narrower argument for reimbursement. The Court denies the request under section 1920(4) for document translation costs.

### 3. Interpretation costs

Finally, Goldwind requests $28,400 in fees for interpreters under 28 U.S.C. § 1920(6), which permits courts to tax costs for "compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services[.]" 28 U.S.C. § 1920(6). The requested interpretation cost therefore falls into a recoverable category.

Goldwind incurred $24,000 in interpretation costs during the trial using vendors selected by Avanzalia, $3,200 at the foreign law hearing, and $1,200 at the Ruiz deposition. Goldwind and Avanzalia split the cost of interpretation at trial, and Goldwind paid for interpretation costs during the second week. Blonder Decl. ¶ 16. Avanzalia does not object to Goldwind's request for interpretation costs, and these costs appear reasonable for several days of interpretation during trial and several hours of interpretation at the hearing and deposition. The Court grants Goldwind's request for interpretation costs, in the amount of $28,400.

### 4. Stay request

Avanzalia requests a stay of payment of costs because it has filed an appeal of the judgment in this case. *See* dkt. 294. "[A] district court may award costs even while the substantive appeal is pending[.]" *Lorenz v. Valley Forge Ins. Co.*, 23 F.3d 1259, 1260 (7th Cir. 1994). And "[a] district court is under no obligation to stay a bill of costs pending appeal, regardless of whether the appeal presents an issue of first impression." *Hovde v. ISLA Dev. LLC*, No. 18 C 7323, 2021 WL 7161195, at *1 (N.D. Ill. Dec. 8, 2021) (quoting *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 854 (N.D. Ill. 2015)). "[J]udicial economy is promoted and piecemeal appeals are avoided by prompt and expeditions rulings on bills of costs." *Mervyn v. Atlas Van Lines, Inc.*,

2017 WL 11562122, at *1 (N.D. Ill. June 28, 2017) (quoting *Allen v. City of Chicago*, 2016 WL 1070828, at 2 (N.D. Ill. Mar. 16, 2016)). Courts do not generally stay payment of costs if the judgment holder objects to the stay, as Goldwind does. *See Hoyde*, 2021 WL 7161195, at *1.

The possibility that the judgment may be reversed, as in any appeal, is not a sufficient reason to stay payment. Avanzalia also seeks a stay because, it argues, Goldwind's request for the cost of document translation under section 1920(4) poses a novel legal question. As the Court has explained, that legal question is not a close one, and regardless, legal issues related to costs are not a basis for a stay. *See id.* The Court declines to stay payment of costs.

**B. Attorney's fees**

Under 28 U.S.C. § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" may be required to pay "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Seventh Circuit "precedent defines 'vexatiously' as either 'subjective or objective bad faith.'" *Vega v. Chi. Bd. of Educ.*, 109 F.4th 948, 956 (7th Cir. 2024) (quoting *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir. 1992)). "If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Fletcher v. Doig*, 145 F.4th 756, 764 (7th Cir. 2025) (quoting *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006)). "[S]ubjective bad faith . . . must be shown only if the conduct under consideration had an objectively colorable basis." *Id.* (quoting *Dal Pozzo*, 463 F.3d at 614). Unlike costs, which are taxed against the opposing party, a

section 1927 motion requests fees from that party's attorneys.

After the Seventh Circuit remanded this case, Goldwind incurred over $2.15 million in attorney's fees. It requests a full or partial award of those fees under section 1927. Goldwind argues that Avanzalia failed to develop a damages model based on tortious interference with breach of contract during the initial discovery period in this case, requiring additional depositions after the Seventh Circuit affirmed the Court's grant of summary judgment on the tortious interference with expectancy claim. Goldwind also objects to Avanzalia's updated damages model, arguing that it was based on the expected prices under the PPAs rather than actual prices and failed to distinguish the damages for each PPA from the damages under Avanzalia's contract with ETESA. In short, Goldwind argues that Avanzalia's damages approach lacked an objectively reasonable basis and therefore unreasonably multiplied the proceedings.

Even at first glance, Goldwind's request for the full amount of its attorney's fees after the remand exceeds the scope of section 1927. The statute provides for "the *excess* costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (emphasis added). But Goldwind has not argued, let alone shown, that all of the fees it incurred after remand to defend its case at trial were due to vexatious conduct by Avanzalia. It makes little sense to hold Avanzalia responsible for the entirety of Goldwind's fees after its own unsuccessful motion for summary judgment.

Nor has Goldwind, in its more specific arguments regarding Avanzalia's damages theory, shown subjective or objective bad faith by Avanzalia's attorneys. The Court allowed Avanzalia to supplement Kleinrichert's expert report, denied Goldwind's motion to exclude Kleinrichert's testimony, denied Goldwind's motion in limine that sought to

exclude Avanzalia's damages theory, and denied Goldwind's argument that it was inappropriate to instruct the jury on Avanzalia's damages model. Similar scenarios have led other courts to conclude that sanctions are inappropriate. *See Obeslo v. Empower Cap. Mgmt., LLC*, 85 F.4th 991, 1010 (10th Cir. 2023) (holding that counsel did not act objectively unreasonably "by proceeding to trial on the same evidence, arguments, and expert witness that sustained its claims through summary judgment and a *Daubert* challenge"). Although the legal standards for these motions differed, the Court at no time found that Avanzalia's damages theory lacked any legal basis. Goldwind critiqued the theory as improperly resting on expectancies rather than direct damages, but Illinois law permits consequential damages of this sort. *See Reuben H. Donnelley Corp. v. Brauer*, 275 Ill. App. 3d 300, 313, 655 N.E.2d 1162, 1172 (1995) ("damages recoverable when a plaintiff proves intentional interference with contractual relations include . . . consequential losses for which the interference is the legal cause"); Restatement (Second) of Torts § 774A (1979) (providing that "[o]ne who is liable to another for interference with a contract or prospective contractual relation is liable for damages for . . . consequential losses for which the interference is a legal cause"). Whether pursuing consequential damages was a wise strategy is a separate question from whether it was vexatious. Goldwind has not demonstrated that Avanzalia's damages model showed "reckless indifference to the law." *4SEMO.com Inc. v. S. Illinois Storm Shelters, Inc.*, 939 F.3d 905, 913 (7th Cir. 2019). Nor has Goldwind demonstrated that Avanzalia's damages theory was pursued with bad faith.

Goldwind also notes that the parties did not settle the case, and it seeks fees based on Avanzalia's settlement demand of $39 million dollars, which was just slightly

below its jury demand of $43 million dollars. A large gap in starting positions in settlement negotiations is far from atypical and not a basis for awarding attorney's fees.

Finally, Goldwind seeks a partial award of fees based on specific instances of Avanzalia's conduct. Avanzalia designated nearly 700 exhibits but introduced only sixty-six. But for an eight-day jury trial in a case concerning six contracts, involving numerous experts and foreign-language witnesses, and spanning conduct covering years, designation of 700 exhibits was not necessarily objectively unreasonable and vexatious. And in the Court's experience, it is par for the course for parties to designate many more exhibits than they introduce to preserve flexibility to pursue varying theories during trial. And Goldwind has not specified which of these 700 documents it contends were improperly designated or indicative of objective bad faith, stating only that "many of the designations had no relevance to Avanzalia's planned trial evidence and were unquestionably inadmissible at trial." Bill of Costs at 16. That conclusory allegation does not assist in establishing objective bad faith given the broad scope of this case. Nor does Goldwind contend that the document designations were made in subjective bad faith. In its reply, Goldwind argues that Avanzalia's attorneys failed to carry their burden to show that these documents were necessary. But the burden lies on Goldwind to show vexatious conduct.

Goldwind makes a similar argument regarding Avanzalia's designation of testimony from eighteen depositions for use at trial under Federal Rule of Civil Procedure 32. Although Avanzalia presented only three of these designations at trial, Goldwind has once again not established how that number of designations was inappropriate in a case of this magnitude and has not demonstrated bad faith.

## Conclusion

For the above reasons, the Court approves in part Goldwind's bill of costs [dkt. 299] and denies Goldwind's motion for attorney's fees. Avanzalia is taxed costs of $74,581.84, comprising $21,575.95 in transcript fees, $24,605.89 in exemplification and copying costs, and $28,400 in interpreter fees. The remainder of the bill of costs is overruled.

Date: August 12, 2026

MATTHEW F. KENNELLY
United States District Judge